**Thomas James PRICE, Appellant,**

v.

**GLOSSON MOTOR LINES, INC., Appellee.**

No. 73–2445.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1974.

Decided Feb. 6, 1975.

Israel Steingold, Richmond, Va. (Steingold, Steingold & Friedman and Jeffrey M. Steingold, Richmond, Va., on brief) for appellant.

C. Hobson Goddin, Richmond, Va. (Goddin, Major, Schubert & Hyman and Aubrey R. Bowles, III, and Bowles & Boyd, Richmond, Va., on brief) for appellee.

Before WINTER, Circuit Judge, and KAUFMAN* and MURRAY,* District Judges.

WINTER, Circuit Judge:

Thomas James Price appeals from a judgment entered upon a jury verdict for defendant Glosson Motor Lines, Inc. (Glosson), in a personal injury action instituted by Price arising out of a collision between two vehicles. He asserts that (1) since Glosson was negligent as a matter of law in causing the collision, the district court erred in submitting to the jury the question of Glosson's negligence, and (2) the court committed reversible error in declining to answer a question posed by the jury during its deliberations. We think that the district court correctly submitted the question of Glosson's negligence to the jury, but it erroneously declined to respond to the jury's inquiry. Accordingly, we reverse the judgment and remand the case for a new trial.

I.

The evidence is undisputed that at approximately 4:00 a. m. on February 4, 1972, a tractor-trailer owned by Glosson ran off the right side of the southbound lanes of Interstate 85 near Alberta, Vir-

* United States District Judge for the District of Maryland, sitting by designation.

ginia, when the driver, Johnny Mac Orren, fell asleep at the wheel. After striking the guard rail, the cab lay on an embankment and the trailer fell over in the highway, completely blocking the right southbound lane and at least partially blocking the left lane. The evidence was disputed as to whether there was adequate room for another vehicle to pass the obstruction safely, and whether a fire illuminated the accident scene. Around 4:00 a. m., plaintiff, en route to South Carolina in a 1964 Buick, collided with the overturned trailer and sustained serious injuries. While admitting that he fell asleep while driving, Orren testified that prior to the accident he had slept for eight hours in the last twelve, had stopped briefly immediately before the accident, and had not dozed off or felt sleepy.

## II.

■ We must apply Virginia law in this diversity case. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Virginia law, evidence that a motorist fell asleep while driving establishes a *prima facie* case of negligence in the absence of circumstances tending to excuse or justify his conduct. Lipscomb v. O'Brien, 181 Va. 471, 25 S.E.2d 261 (1943); Jones v. Pasco, 179 Va. 7, 18 S.E.2d 258 (1942). As said in Newell v. Riggins, 197 Va. 490, 90 S.E.2d 150, 153 (1955):

> Sleep does not ordinarily come to a normal person without some previous warning of its approach. To fall asleep while driving is usually the result of neglect in failing to heed the warning. Before sleep comes there is usually some drowsiness, a tendency to doze, or to become dull or dizzy . . . . [T]he signals of the approach of sleep manifest themselves clearly under normal conditions. When the driver of an automobile fails to heed the signals he relaxes the vigilance which the law requires. *If there are any facts which excuse him from the charge of negligence, the burden is upon him to produce them.* . . .

> No matter what may be the cause of sleepiness, it is not probable that sleep would come to a driver of an automobile without some prior warning. The jury may take this probability into account. (Emphasis supplied.)

■■ Negligence as a matter of law exists only where reasonable men cannot differ as to the correct conclusion to be drawn from the evidence. See Wratchford v. S. J. Groves & Sons Co., 405 F.2d 1061 (4 Cir. 1969). In the instant case, Glosson did present evidence in an attempt to counteract the inference of negligence which could be drawn from Orren's falling asleep at the wheel. Orren testified that he had slept for several hours within the twelve-hour period preceding the collision and that he had no forewarning of sleep. We think therefore that, under Virginia law, it was proper to submit the question of defendant's negligence to the jury. Newell v. Riggins, supra.

## III.

■ On the issue of contributory negligence, raised by the evidence that the scene was illuminated by a fire and that the northbound lane of the road was not completely obstructed by the overturned trailer, the district court instructed the jury: "And if the jury are uncertain as to whether the plaintiff was guilty of contributory negligence, or if you believe that it is just as probable that the plaintiff was not guilty of any such negligence as it is that he was, then you cannot find the plaintiff guilty of contributory negligence." After deliberating for twenty-five minutes, the jury submitted this question to the court: "Did the instructions state that if there be doubt in the minds of the jurors as to the negligence or lack of it on the part of the plaintiff, the jury should find for the plaintiff?"

Upon receipt of the jury's question, Price's attorney suggested that the court reread the instruction quoted above, but counsel for defendant objected. Although the evidence on negligence and

contributory negligence in this case made it very likely that contributory negligence was the crucial and determinative issue before the jury, the district court declined to respond to the jury's inquiry about its instructions on contributory negligence. We think this to be reversible error.

## IV.

A federal district judge is a "very puissant figure"[1] with far-reaching powers and responsibilities.

> In a trial by jury in a Federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law.

Herron v. Southern Pacific Co., 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857 (1931).[2] The jury serves under the district judge's guidance,[3] and the responsibility of the judge to the jury is particularly marked where the jury indicates its confusion on a specific subject. Once "a jury makes known its difficulty", it is the duty of the judge to be responsive to that difficulty, and he is "required to give such supplemental instructions as may be necessary". Walsh v. Miehle-Goss-Dexter, Inc., 378 F.2d 409, 415 (3 Cir. 1967).[4]

 Generally, of course, the form and extent of jury instructions are within the discretion of the court. See United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); Wright & Miller, supra, § 2556. In the instant case, the district judge evinced concern that reinstruction would overemphasize one aspect of the case; and in support of the correctness of his refusal to explain what he had previously said, defendant cites language from *Bayer,* supra:[5]

> Once the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion. The trial judge in the light of the whole trial and with the jury before him may feel that to repeat the same words would make them no more clear, and to indulge in variations of

---

1. Wright, Law of Federal Courts, § 97 at 432 (2nd ed. 1970).

2. Although *Herron* is a pre-Federal Rules of Civil Procedure case, the Federal Rules have, if anything, made the federal trial judge even more puissant. See Wright, supra, § 97 (2nd ed. 1970).

3. As said in 9 Wright & Miller, Federal Practice and Procedure, § 2255 at 654 (1971):
 > It is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth.

4. *Walsh* involved a jury request for clarification of an instruction concerning contributory negligence. There, the court held that a "perfunctory re-reading of the very instructions which may have led to the difficulty" was inadequate. The court relied on the reasoning of two previous criminal cases, Bollenbach v. U. S., 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946), and Wright v. U. S., 102 U.S.App.D.C. 36, 250 F.2d 4 (1957).
 Both *Wright* and *Bollenbach* are criminal cases and distinguishable from the present case on the facts, but the language used in each goes far beyond its narrow situation:
 > Discharge of the jury's responsibility for drawing appropriate conclusions from the testimony depended on discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria. When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy. In any event, therefore, the trial judge had no business to be "quite cursory" in the circumstances in which the jury here asked for supplemental instruction. Id. 326 U.S. at 612–613, 66 S.Ct. at 405.
 See also Wright, supra, at 11:
 > The refusal to answer the juror's question and the denial of the requested instruction [which embodied the juror's request for explanation of a crucial instruction previously given] constitute reversible error. . . . [I]t is the duty of the judge . . . to provide the jury with light and guidance in the performance of its difficult task.

5. *Bayer,* however, provides little support for the procedure of the court below. In *Bayer,* the district judge did reread a correct, though brief, instruction at the request of the jury but did not amplify the instruction because when he inquired whether the jury was still confused, he received no response.

statement might well confuse. 331 U.S. 536, 67 S.Ct. 1396.

Concern about confusing or prejudicing the jury by over-instruction is, of course, appropriate. In the present contest, however, the concern is not compelling, because here the jury specified its difficulty and confusion concerning instructions *on the central question in the case.* In the absence of a jury inquiry, the district judge works in something of a vacuum; he can never be sure how well a jury has understood instruction on points of law, complex or simple. When a jury makes a specific difficulty known, however, it is far easier for the judge to be certain that he is responding to difficulties rather than compounding them. Cf. *Bayer,* supra.[6] And when the difficulty involved is an issue as central to the case as contributory negligence is here, helpful response is mandatory.

■ An aspect of an overall charge can be amplified and explained, in response to a jury's inquiry, without prejudicially emphasizing any one aspect of the case. Ordinarily the district judge need not repeat the entire charge. He can remind the jury of the other aspects of the case covered by his charge and he should caution them that the aspect of the charge which he amplifies and explains should not be given undue weight and should be considered in the light of his other instructions. Reinstruction, in whole or in part, when requested by the jury, seems to be almost universally upheld in the Courts of Appeals. Polara v. Trans-World Airlines, 284 F.2d 34 (2 Cir. 1960), is particularly in point. There, the district judge was faced with a situation similar to that in the instant case. The jury indicated its difficulties in coming to a conclusion on contributory negligence twice, and twice the trial judge reread his instructions on the point. In affirming this action, the Court of Appeals characterized the rereading as "entirely proper," and "indeed virtually necessary under the circumstances." 284 F.2d at 39. See also Bitsos v. Red Owl Stores, 459 F.2d 656 (8 Cir. 1972); Gay v. Augur, 97 U.S.App.D.C. 336, 231 F.2d 495 (1956). We are not cited to, nor have we found, any compelling contrary authority.[7]

Thus, we hold that it was the duty of the trial court to respond when the jury

---

6. See note 4, supra; see also Fitzpatrick v. Sooner Oil Co., 212 F.2d 548, 551 (10 Cir. 1954):

> When a jury returns to the courtroom with the request for further instruction, the presumption must be that the only uncertainty in the jury's mind is with respect to the matter about which further instruction is sought and the court is *required* only to fairly answer the question asked by the jury. It is not required to restate the charge as given by the court (emphasis added).

7. Cases in which a refusal to instruct in response to jury inquiry has been upheld seem to be few and rather limited in their scope. In Phoenix Blue Diamond Express v. Mendez, 103 F.2d 66 (9 Cir.), cert. denied, 308 U.S. 566, 60 S.Ct. 79, 84 L.Ed. 475 (1939), and in Wilson v. United States, 422 F.2d 1303 (9 Cir. 1970), the Ninth Circuit upheld trial judges' refusals to respond to jurors' questions about matters germane to the case. In both of these cases, however, the question proceeded from a single juror. In *Phoenix,* the juror's question came at the end of the judge's charge. The court found that the trial judge had adequately instructed concerning the subject matter of the question and concluded that: "Other jurors had doubtless heard and understood the instruction [there was an off-record indication that the juror in question had poor hearing] and were able to enlighten their associate." In *Wilson,* the jury had made a request which the judge answered in open court. When he finished his explanation, a juror asked a question about another matter which the judge also answered, but when another juror asked a question about a third matter the judge told the jury to confer further and he would if necessary reread all his instructions. *Wilson* distinguished *Walsh,* supra, and other similar cases on the grounds that the jury had been given an adequate instruction in the first place and that the judge did not deny but merely deferred the request until such time as an answer might appear necessary. Manifestly, a question from a single juror is crucially different from one asked by the jury as a whole. In the first instance, the questioner can be referred to his colleagues who presumably understand; in the second, reference to or among colleagues has presumably already proven inadequate.

indicated difficulty with instructions on the central issue of the case; the failure to do so was reversible error.

Reversed and remanded.