927 F.2d 551
 Darlene JOHNS and Steve Johnson, Parents of Olivia Johns,
Deceased, Plaintiffs-Appellants,
v.
G. Truett JARRARD, Jr., M.D., Defendant, David G. Fisher
M.D., and J.J. Thomasson, M.D., Defendants-Appellees,
Newnan Hospital, Defendant-Cross-Claimant-Appellee,
Coastal Emergency Service, Inc., Defendant-Cross-Defendant-Appellee.
 No. 89-8930.
 United States Court of Appeals,
Eleventh Circuit.
 March 25, 1991.
 
 Ronald L. Hilley, Tucker, Ga., for plaintiffs-appellants.
 Theodore E.G. Pound, Lisa Joan Fellner, Alston and Bird, Atlanta, Ga., for Fisher and Coastal Emergency Service.
 David H. Tisinger, Paul E. Weathington, Kevin Buice, Tisinger, Tisinger, Vance and Greer, Carrollton, Ga., for Thomasson and Jarrard.
 Sidney F. Wheeler, Stephen H. Sparwath, Debra LeVorse, Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., for Newnan Hosp.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before JOHNSON and HATCHETT, Circuit Judges, and DYER, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In this wrongful death action against physicians, a physician supply company, and a hospital, we determine that a new trial is required because the district court improperly answered a question from the jury during the jury's deliberations.
 
 FACTS
 
 2
 On June 29, 1986, at approximately 4 p.m., Olivia Johns fell off her bicycle. At approximately 4:20 p.m., Olivia Johns' grandfather, Clifford Johns, took her to Newnan Hospital, in Newnan, Georgia, where Dr. David Fisher, the emergency room physician on duty, saw Olivia Johns. Olivia had an elevated pulse, a low blood pressure and complained of pain in her right side. After examining Olivia, Dr. Fisher wrote "rule out ruptured viscus" in the emergency room record. Viscus is any large interior organ in any one of the three great cavities of the body, especially the abdomen. Treatment for a ruptured viscus causing internal bleeding generally requires stabilization of the patient through the administration of fluids, and sometimes blood, until a surgeon can operate and stop the bleeding.
 
 
 3
 After examining Olivia, Dr. Fisher began administering fluids into the patient. He also telephoned Dr. J.J. Thomasson, Jr., the on-call surgeon, regarding Olivia's condition. After calling Dr. Thomasson, it became apparent to Dr. Fisher that Olivia's condition was declining; so, Dr. Fisher called Dr. Thomasson again. Although the content and timing of these telephone conversations are in dispute, Dr. Fisher generally advised Dr. Thomasson of Olivia's condition and requested that he come to the hospital.
 
 
 4
 Sometime between 5 p.m. and 5:05 p.m., immediately after Dr. Thomasson walked into the emergency room, Olivia suffered a cardiac arrest. Despite efforts to resuscitate her, Olivia died at 6:02 p.m. Olivia did not receive blood at any time during her treatment at Newnan Hospital. An autopsy revealed that Olivia had a lacerated liver, which resulted in the release of blood into her abdomen, causing cardiac arrest.
 
 PROCEDURAL HISTORY
 
 5
 Darlene and Steve Johns, Olivia's parents, filed this wrongful death action naming as defendants Dr. Fisher, Coastal Emergency Services, Inc. (Coastal), Dr. G. Truett Jarrard, Jr., the on-call internist, Dr. Thomasson, and Newnan Hospital. Coastal supplied Newnan Hospital with emergency room physicians, including Dr. Fisher. The complaint alleged (1) medical malpractice against the physicians, (2) respondeat superior liability against Newnan Hospital for the actions of the physicians, (3) respondeat superior liability against Coastal for the actions of Dr. Fisher, and (4) negligence against Coastal for supplying and holding Dr. Fisher out as competent to practice emergency room medicine.
 
 
 6
 The district court granted Coastal's motion for partial summary judgment on the ground that Coastal could not be vicariously liable for Dr. Fisher's alleged acts of negligence. The district court denied all other defendants' motions for summary judgment.
 
 
 7
 At the conclusion of the parents' case, the district court granted Dr. Thomasson's motion for a directed verdict on the claim that he negligently failed to respond to this emergency in a timely fashion. The district court also granted Coastal's motion for a directed verdict as to the allegation that Coastal negligently held Dr. Fisher out as competent to practice emergency room medicine.
 
 
 8
 During jury deliberations, the jury sent out the following question:
 
 
 9
 In the testimony it was mentioned that Doctor Fisher in his diagnosis ruled out ruptured viscus. Was he asking or telling Doctor Thomasson that a ruptured viscus should be ruled out?
 
 
 10
 After reading the question, the district court stated: "Seems to me that's clearly asking for an interpretation of the evidence that the jury must make, unless you all have some consensus other than that." Coastal's attorney noted that "there is some confusion in the use of that medical term of art, 'rule out.' "
 
 The parents' attorney commented:
 
 11
 I mean--your Honor, I think we made the specification of negligence clear, which was that we got a fluid question. I think that if--I think the best thing to do is--this is obviously--they are asking if somebody remembers the testimony different, and they are asking the court to help them figure out what some of the testimony was.
 
 
 12
 Really, the only thing to do is just to leave them with it, and then maybe they will study it some more or maybe they will go on to something else.
 
 
 13
 The district court responded, "[m]aybe they won't. Maybe they will get hung up on a non-issue. That's what I'm primarily concerned about." After further discussion the district court responded by asking the jury to restate the question.
 
 
 14
 A short time later, the jury returned with the following question:
 
 
 15
 When Doctor Fisher stated in the medical records, quote, "rule out ruptured viscus," end of quote, was he stating he had ruled out ruptured viscus in his preliminary examination?
 
 
 16
 The district court's initial comment concerning the question was "I could not answer it unless you all unanimously agree." Later, however, the district court, over the parents' objection, responded to the question by telling the jury "no." Shortly thereafter, the jury returned a verdict for the remaining defendants.
 
 CONTENTIONS
 
 17
 The parents contend that the district court's response to the jury's question misled the jury resulting in an erroneous verdict. Further, the parents contend that the district court erred when it (1) granted Coastal's motion for partial summary judgment on the ground that Coastal could not be held vicariously liable for Dr. Fisher's alleged acts of negligence, and (2) granted Dr. Thomasson's motion for a directed verdict.
 
 ISSUES
 This appeal raises the following issues:
 
 18
 (1) Whether the district court erred when it responded to the jury's question;
 
 
 19
 (2) Whether the district court erred when it granted Coastal's motion for partial summary judgment; and
 
 
 20
 (3) Whether the district court erred when it granted Dr. Thomasson's motion for a directed verdict.
 
 DISCUSSION
 A. Jury Question and Answer
 
 21
 "It is the inescapable duty of the trial judge to ... guide, direct, and assist [the jury] toward an intelligent understanding of the legal and factual issues involved in their search for truth." 9 Wright & Miller, Federal Practice and Procedure Sec. 2556 at 654 (1971). To that end, a district court "may comment on the evidence, may question witnesses and elicit facts not yet adduced or clarify those presented." Hanson v. Waller, 888 F.2d 806, 813 (11th Cir.1989) (quoting Moore v. United States, 598 F.2d 439, 442 (5th Cir.1979)).
 
 
 22
 The responsibility of a federal trial judge is "particularly marked where the jury indicates its confusion on a specific subject. Once 'a jury makes known its difficulty,' it is the duty of the judge to be responsive to the difficulty, and [the court] is 'required to give such supplemental instructions as may be necessary.' " Price v. Glosson Motor Lines, Inc., 509 F.2d 1033, 1036 (4th Cir.1975) (quoting Walsh v. Miehle-Goss-Dexter, Inc., 378 F.2d 409, 415 (3d Cir.1967)). "The proper standard of review on jury instructions is to view the challenged instructions 'as part of the entire charge, in view of the allegations of the complaint, the evidence presented, and the arguments of counsel, to determine whether the jury was misled and whether the jury understood the issues.' " National Distillers and Chemical Corp. v. Brad's Machine Products, Inc., 666 F.2d 492, 497 (11th Cir.1982) (quoting First Virginia Bankshares v. Benson, 559 F.2d 1307, 1316 (5th Cir.1977)).
 
 
 23
 The parents contend that the district court's response to the jury's question misled the jury and resulted in an improper verdict. The key issue before the jury, the parents argue, was whether Dr. Fisher took proper measures to stabilize Olivia's internal bleeding to permit her to survive until surgery could be performed. They assert that a credibility issue arose when their expert, Dr. Dresnick, testified that the only plausible explanation for Dr. Fisher's inadequate treatment was his failure to properly diagnose Olivia's condition. According to the parents, the district court's answer to the jury's question told the jury (1) that Dr. Fisher properly diagnosed Olivia's condition during his preliminary examination, and (2) to disbelieve Dr. Dresnick's opinion. Therefore, say the parents, the district court's answer to the question "judicially impeached" their expert.
 
 
 24
 Dr. Fisher, Coastal and Newnan Hospital respond that the jury's question concerned a matter that was not in dispute and not important as to liability or damages. Moreover, Dr. Fisher, Coastal and Newnan Hospital argue that all of the evidence supports the conclusion that Dr. Fisher correctly diagnosed a ruptured viscus. Consequently, they conclude that the district court's response was appropriate because it prevented the jury from being concerned with a non-issue.
 
 
 25
 We find that the district court's response to the question misled the jury, and a new trial is required. Although the parties do not appear to be in disagreement over the meaning of the phrase "rule out ruptured viscus," it is clear that the jury was unsure of its meaning, and attached significance to it.[1] Further, as the district court correctly stated after the jury sent out the first question, and the parties essentially agreed, the jury was focusing on a non-issue. The parents did not list misdiagnosis as one of their specifications of negligence, and their counsel did not disagree with the district court's characterization of the jury's question as raising a non-issue.
 
 
 26
 Likewise, the only testimony relating to Dr. Fisher's alleged failure to properly diagnose Olivia's problem was offered by Dr. Dresnick, who testified that, in his view, the only possible explanation for Dr. Fisher's inadequate treatment was that he failed to properly diagnose hemorrhagic shock, not a ruptured viscus. Finally, the parents presented no evidence (1) that Dr. Fisher in his diagnosis ruled out a ruptured viscus (i.e. concluded that a ruptured viscus was not the problem), or (2) that if Dr. Fisher had ruled out a ruptured viscus, that such a diagnosis would amount to negligence.
 
 
 27
 Because the jury was focusing on a non-issue, the district court should have given supplemental instructions designed to address the jury's apparent confusion and refocus attention on the central issue in the case: whether Dr. Fisher, in his efforts to stabilize Olivia, administered sufficient fluids (both quantity and type). Instead, by answering "no," the district court joined in creating an issue where none had previously existed. It is as though the jury asked, "Did Dr. Fisher correctly diagnose the child's condition?" The district court's answer was "yes." Consequently, since the jury apparently believed that the case depended upon whether Dr. Fisher correctly diagnosed a ruptured viscus, the district court, by its answer, directed the jury to rule for the defendants. As previously noted, shortly after the district court answered the question, the jury returned a verdict for the defendants. Because we find that the district court's supplemental instruction when answering the jury's question misled the jury, focusing attention on a non-issue and directing that the jury rule for the defendants, we hold that the parents are entitled to a new trial. See National Distillers, 666 F.2d at 497.
 
 B. Summary Judgment for Coastal
 1. Standard of Review
 
 28
 Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." "The moving party bears the burden of meeting this exacting standard." Apcoa, Inc. v. Fidelity National Bank, 906 F.2d 610, 611 (11th Cir.1990). "In assessing whether the moving party has satisfied this burden the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party." Apcoa, Inc., 906 F.2d at 611. "Once the motion for summary judgment is properly made, the burden then shifts to the non-moving party, which 'must set forth specific facts showing that there is a genuine issue for trial.' " Apcoa, Inc., 906 F.2d at 611 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). "If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted). "Ultimately, the Court must decide whether the record, taken as a whole, could lead a rational trier of fact to find a genuine issue for trial." Apcoa, Inc., 906 F.2d at 611.
 
 2. Applicable Law
 
 29
 Under Georgia law, before the parents can recover against Coastal for Dr. Fisher's alleged acts of negligence, they must show that Dr. Fisher was an "employee" of Coastal, and not an "independent contractor." Brown v. Coastal Emergency Services, Inc., 181 Ga.App. 893, 354 S.E.2d 632, 634, aff'd, 257 Ga. 507, 361 S.E.2d 164 (1987). " 'The true test of whether the relationship is one of employer-employee or employer-independent contractor is whether the employer, under the contract either oral or written, assumes the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract.' " Brown, 354 S.E.2d at 634-35 (quoting Hodges v. Doctors Hospital, 141 Ga.App. 649, 234 S.E.2d 116, 117 (1977)). Further, "[w]here the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control." Bartlett v. Northside Realty Associates, Inc., 191 Ga.App. 10, 380 S.E.2d 744, 745 (1979) (quoting McGuire v. Ford Motor Credit Co., 162 Ga.App. 312, 290 S.E.2d 487, 489 (1982)).
 
 
 30
 In the context of vicarious liability actions against hospitals based upon the negligence of a physician, Georgia courts have pointed out that "literal application of [the control] test would effectively enshroud hospitals with an 'impenetrable cloak of immunity.' " Brown, 354 S.E.2d at 635 (quoting Stewart v. Midani, 525 F.Supp. 843, 849 (N.D.Ga.1981)). This is because "it would almost certainly be violative of a physician's professional ethics for him to abandon his professional judgment in matters relating to the diagnosis and treatment of patients." Brown, 354 S.E.2d at 635.
 
 
 31
 Consequently, Georgia courts have found that a hospital may be vicariously liable for the negligent acts of physicians even where the hospital does not control the manner and method of the physician's work. See, e.g., Newton County Hospital v. Nickolson, 132 Ga.App. 164, 207 S.E.2d 659, 662-63 (1974) (appeals court upheld denial of summary judgment where hospital paid physician on an hourly basis and exercised control over work schedule, but not the manner or method of work); Hodges (evidence that hospital required staff physician to perform emergency room services on a rotational basis and paid physician $100 a day held sufficient to create jury issue as to hospital's liability); Hollingsworth v. Georgia Osteopathic Hospital, Inc., 145 Ga.App. 870, 245 S.E.2d 60 aff'd, 242 Ga. 522, 250 S.E.2d 433 (1978). "Such rulings suggest that, in practice, a hospital may subject itself to vicarious liability for the malpractice of its emergency room physicians merely by assuming control over the time of their performance and without assuming control over the manner and method of their performance." Brown, 354 S.E.2d at 635.
 
 3. Analysis
 
 32
 In light of these governing principles, we find that the district court acted properly when it granted Coastal's motion for summary judgment. At the outset, we note that although the parties cannot by contract create an independent contractor status where the relationship is in reality one of employer-employee, Dr. Fisher's contract with Coastal specifically denominates him as an independent contractor. See Washington Road Properties, Inc. v. Home Insurance Co., 145 Ga.App. 782, 245 S.E.2d 15, 16 (1978).
 
 
 33
 In our view, the parents failed to create a genuine issue of fact as to whether Coastal controlled the time, manner and method in which Dr. Fisher rendered his services. The district court ruled:Fisher was employed by Coastal to staff Newnan Hospital's emergency room pursuant to a written contract. In Brown [Brown v. Coastal Emergency Services, Inc., 181 Ga.App. 893, 354 S.E.2d 632 (1987) ], the Georgia Court of Appeals construed a contract between a physician and Coastal containing relevant terms identical to those contained in the contract between Fisher and Coastal in this case. The court concluded that under the terms of the contract, the doctors in Brown "must conclusively be deemed to have been acting as independent contractors rather than employees in their care and treatment of emergency room patients." Brown, 181 Ga.App. at 896 [354 S.E.2d 632]. Based on this authority, the court concludes that under Georgia law Fisher was not an employee of Coastal, but an independent contractor. In addition, "there being no suggestion in the record that [plaintiffs] relied in any way upon Coastal's reputation or, indeed, that [they] even knew of that company's existence, there is no basis upon which Coastal may be held liable under the apparent agency doctrine." Brown, 181 Ga.App. at 898 [354 S.E.2d 632].
 
 
 34
 We agree. The contract terms that the district court found identical to those in Brown were that (1) Dr. Fisher could only be scheduled to render services for the next month after Dr. Fisher notified Coastal of his availability and (2) Dr. Fisher was subject to peer review, rather than review by Coastal.
 
 
 35
 In light of Brown and these factors, we hold that Dr. Fisher was an independent contractor rather than an employee. Consequently, the district court did not err when it granted Coastal's motion for summary judgment on the vicarious liability claim. Additionally, we reject the parent's claim that this case is distinguishable from Brown. Brown involved virtually the same set of facts and the same defendant, i.e., Coastal. As the district court stated, "the relevant terms" of the contracts in Brown and in this case are "identical."
 
 C. Directed Verdict for Dr. Thomasson
 1. Standard of Review
 
 36
 A directed verdict is permissible only when, without weighing the credibility of witnesses, the facts and inferences point so strongly and overwhelmingly in favor of one party that a reasonable jury could not arrive at a contrary verdict; where substantial conflicting evidence exists in the record, a directed verdict is improper. See Watts v. Great Atlantic and Pacific Tea Co., 842 F.2d 307, 309-10 (11th Cir.1988) (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir.1969) (en banc)). When deciding a motion for directed verdict, the district court must view the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion. "In determining whether 'the facts and inferences point ... overwhelmingly in favor of one party,' the judge is not permitted to weigh the evidence which has been introduced on both sides. Instead, [the judge] is obliged to make a prior, more basic determination of whether any credible evidence has been proffered by the non-moving party." Rabun v. Kimberly-Clark Corp., 678 F.2d 1053, 1057 (11th Cir.1982) (quoting King v. Exxon Co. U.S.A., 618 F.2d 1111, 1116 (5th Cir.1980) (citations omitted)).
 
 2. Analysis
 
 37
 To create a jury issue in a medical malpractice action in Georgia, a plaintiff must usually present expert medical testimony on two issues--breach of the applicable standard of care and proximate causation. See Overstreet v. Nickelsen, 170 Ga.App. 539, 317 S.E.2d 583, 586-88 (1984); Parrott v. Chatham County Hospital Authority, 145 Ga.App. 113, 243 S.E.2d 269, 270-71 (1978).[2] The parents contend that the district court erred when it granted Dr. Thomasson's motion for a directed verdict. According to the parents, a question of fact existed concerning whether Dr. Thomasson's response time when Dr. Fisher summoned him to Newnan Hospital fell within the standard of care required of an on-call surgeon. Dr. Thomasson responds that the district court properly granted his motion for a directed verdict because the parents (1) failed to create a jury issue as to whether his response time breached the applicable standard of care, and (2) offered absolutely no expert medical testimony that the alleged negligence proximately caused any damage to Olivia.
 
 
 38
 We find that the district court did not err when it granted Dr. Thomasson's motion for a directed verdict. While we are not persuaded that the parents failed to create a jury question regarding whether Dr. Thomasson breached the applicable standard of care, we are persuaded that the parents failed to create a jury question on the issue of causation. As previously noted, a plaintiff in a medical malpractice suit must not only demonstrate that the physician breached the applicable standard of care, but must also prove that that breach proximately caused the alleged injury.
 
 
 39
 In this case, the parents did not offer any expert testimony to the effect that Dr. Thomasson's alleged failure to respond in a timely fashion proximately caused or contributed to Olivia's death. Further, implicit in the parents specifications of negligence against Dr. Fisher is the assumption that had Dr. Fisher properly administered fluids to Olivia, she would have been in a stable condition when Dr. Thomasson arrived, thereby affording him the opportunity to perform the necessary surgery. Indeed, the parents' expert witness testified that had Dr. Fisher not breached the applicable standard of care, Olivia would have lived beyond the time when Dr. Thomasson arrived.
 
 CONCLUSION
 
 40
 For the foregoing reasons, we conclude (1) that the district court erred when it answered the jury's questions, (2) that the district court properly granted summary judgment in favor of Coastal as to the parents' vicarious liability claim, and (3) that the district court properly granted Dr. Thomasson's motion for a directed verdict. This case is remanded to the district court for proceedings consistent with this opinion.
 
 
 41
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 42
 DYER, Senior Circuit Judge, concurring in part and dissenting in part:
 
 
 43
 I concur in Parts B and C and dissent from Part A of the majority opinion.
 
 Jury Question and Answer
 
 44
 There was no evidence that Dr. Fisher failed to diagnose a ruptured viscus in the patient. In fact, plaintiff's expert testified he did not dispute or disagree with the statement that Dr. Fisher had correctly diagnosed a ruptured viscus. It is undisputed that the parties and the judge agreed that the jury was focusing on a non-issue. The district court was therefore required to give a supplemental instruction to prevent a construction of the evidence never advanced by any party or witness. Price v. Glosson Motor Lines, Inc., 509 F.2d 1033, 1036 (4th Cir.1975).
 
 
 45
 The majority agrees that the district court should have given a supplemental instruction designed to address the jury's apparent confusion, but concludes that the simple answer "No" to the jury's question created an issue where none had previously existed and misled the jury into believing that the case depended upon whether Dr. Fisher correctly diagnosed a ruptured viscus. By the court's answer, the majority opines, it directed the jury to rule for the defendants. I disagree.
 
 
 46
 There was no evidence, argument, or specification of negligence to support any conclusion that Dr. Fisher failed to diagnose a ruptured viscus; thus the district court correctly answered the jury's question "No". I find it entirely unpersuasive that answering a question on that non-issue could somehow impeach plaintiff's expert. In my opinion the district court did not err by its answer to the question asked by the jury during its deliberations on a matter that was utterly irrelevant to the case, upon which no facts or evidence were in dispute, and where the judge's answer was factually correct.
 
 
 
 [1]
 During cross-examination, Dr. Dresnick agreed that the phrase "rule out ruptured viscus" meant that Dr. Fisher's diagnosis was that this patient needed to be assessed for the possibility of a ruptured viscus. None of the parents' witnesses testified that "rule out ruptured viscus" meant that Dr. Fisher ruled out a ruptured viscus in the sense that it was not the problem
 
 
 [2]
 Expert testimony is not required in "those exceedingly rare cases wherein the medical questions presented concern matters which a jury can be credited with knowing by reason of common knowledge or the possibility of actionable medical negligence appears so clearly from the record that the plaintiff-patient need not produce expert medical testimony." Killingsworth v. Poon, 167 Ga.App. 653, 307 S.E.2d 123, 126 (1983). This is not one of those "exceedingly rare cases" where expert medical testimony is unnecessary