**Sandra Jean GRIFFITH, Plaintiff,**

v.

**MT. CARMEL MEDICAL CENTER, a Kansas Corporation; Eugene Carl McCormick, an Individual; Physician Staffing Resources, Inc., a Texas Corporation; and Judith Ulery, an Individual, Defendants.**

**No. 92–1141–MLB.**

United States District Court, D. Kansas.

Dec. 15, 1992.

John W. Johnson, Render, Kamas & Hammond, Wichita, KS, Richard W. Lowry, Logan & Lowry, Vinita, OK, Alan Laufman, J.D., M.D., Dallas, TX, for Sandra Jean Griffith.

Amy S. Lemley, Foulston & Siefkin, Wichita, KS, for Mount Carmel Medical Center, Inc. and Judith Ulery.

William Tinker, Jr., McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, KS, for Eugene Carl McCormick.

E. Dudley Smith, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for Physician Staffing Resources, Inc.

## MEMORANDUM AND ORDER

BELOT, District Judge.

Before the court are the following pleadings: defendant Physician Staffing Resources, Inc.'s (PSR) motion for summary judgment and memorandum in support (Docs. 76 and 77), plaintiff's response (Doc. 87), PSR's reply (Doc. 126), plaintiff's supplement to its response (Doc. 136) and defendants' second supplemental brief (Doc. 139). The court notes that the pleadings filed at dockets 126, 136 and 139 are not filed in accordance with local rule 206(b). In addition, while PSR's motion complies with rule 206(c) in that it sets forth twenty-four specific statements of uncontroverted fact, plaintiff's response does not comply with the rule which provides, in pertinent part:

> A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

Plaintiff's response contains contentions, statements of uncontroverted fact and a section entitled "controverted facts" which is nothing more than a statement of issues. It is impossible to tell which of PSR's statements of fact are controverted by the plaintiff and accordingly, PSR's statements of uncontroverted fact are deemed admitted.

The parties are familiar with the standards relating to summary judgment and they will not be repeated here.

The principal issue to be resolved is the relationship between PSR and Dr. Eugene C. McCormick, the physician whose negligence allegedly caused or contributed to the death of plaintiff's decedent. Plaintiff alleges, and PSR denies, that Dr. McCormick was acting as the agent, servant and employee of PSR at the time he treated plaintiff's decedent and therefore that PSR is liable for his negligence under the doctrine of *respondeat superior.*

The following facts are relevant to this issue:

1. PSR is a Texas corporation that is in the business of recruiting emergency physicians to various hospitals.

2. The written agreement between PSR and Mt. Carmel Medical Center provides, in pertinent part:

(a) The relationship between PSR and the hospital is that of independent contractor/contractee.

(b) PSR will not be deemed or required to do any act or service which would constitute the practice of medicine or in any way influence the practice of medicine.

(c) PSR will recruit physicians for the hospital's emergency room department but that each physician so recruited must qualify for and be accepted by the hospital prior to performing any services.

(d) After the hospital grants privileges to a physician, PSR will schedule the physician for service in the hospital's emergency room.

(e) Physicians so scheduled will be considered independent contractors and not employees or agents of the hospital except that professional conduct of said

physicians shall be governed by the by-laws of the hospital and of the medical staff and by the hospital's rules, policies and regulations.

(f) The hospital will report to PSR any patient complaint or disciplinary action pertaining to a physician provided under the agreement or any conduct of the physician which impairs the physician's ability to perform services or reflects adversely upon the physician's professional conduct, competence or ethics.

3. There was no written contract between PSR and Dr. McCormick. However, there was an oral arrangement that:

(a) PSR would let Dr. McCormick know when times were available for him to work in emergency rooms.

(b) Dr. McCormick would let PSR know when he was available to work.

(c) Dr. McCormick agreed to work a certain number of hours in hospital emergency rooms but it was his decision whether he would be available to work at any particular hospital.

4. The length of shifts Dr. McCormick worked or the number of hours he worked was a decision made by Dr. McCormick based on his professional judgment whether he would be able to handle the length of shift at any particular hospital at any particular time.

5. PSR did not require Dr. McCormick to work at any particular hospital or any particular length of time.

6. PSR did not instruct Dr. McCormick as to the manner or method of care or treatment of any patient including, but not limited to, his care and treatment of plaintiff's decedent.

7. PSR did not review Dr. McCormick's performance but rather Dr. McCormick was subject to peer review according to the rules of the hospitals' staffs where he worked.

8. PSR advised Dr. McCormick of the hourly rate he would be paid.

The plaintiff does not dispute any of these facts. Rather, she rests her *respondeat superior* claim on the argument that whether or not an employer/employee or independent contractor/contractee relationship existed is a question of fact to be determined by the jury. Plaintiff cites *Krueger v. Mammoth Mountain Ski Area, Inc.*, 873 F.2d 222 (9th Cir.1989) and section 220(2) of the Restatement of Agency, Second. Significantly, plaintiff does not cite any Kansas authority which, in this diversity case, is applicable.

If this case should go to trial, the issue of PSR's status would go to the jury under the following Kansas Pattern Instructions:

7.01: An employee is a person who, by agreement with another called the employer, performs or is to perform services for the employer, with or without compensation. The agreement may be written, oral or implied by the behavior of the parties.

7.11: An independent contractor is one who agrees to perform a service for another, but who is neither under the control of the other or subject to the other's right of control with respect to the physical conduct of the undertaking.

■ These instructions are, of course, derived from and consistent with Kansas law regarding the distinction between an employee and an independent contractor. While the issue may be, and usually is, a question of fact, both this court and the courts of Kansas have recognized that in certain circumstances, the issue may be one of law. See *Foster v. Board of Trustees of Butler Community College*, 771 F.Supp. 1122, 1129 (D.Kan.1991) and *Falls v. Scott*, 249 Kan. 54, 64, 815 P.2d 1104 (1991). To reach that conclusion here, the court must determine whether the material facts, viewed in the light most favorable to the plaintiff, are susceptible to but one reasonable conclusion or, as stated by the Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–53, 106 S.Ct. 2505, 2511–13, 91 L.Ed.2d 202, 214 (1986) whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

In *Falls v. Scott, supra*, the Kansas Supreme Court stated:

An independent contractor is defined as one who, in exercising an independent employment, contracts to do certain work according to his own methods, without being subject to the control of his employer, except as to the results or product of his work. The primary test used by the courts in determining whether the employer-employee relationship exists, is whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result to be accomplished. It is not the actual interference or exercise of control of the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor.

To determine whether or not PSR exercised the duty of control over Dr. McCormick sufficient to make PSR responsible for Dr. McCormick's fault, it is appropriate to consider the acts of fault on Dr. McCormick's part which plaintiff contends caused the death of plaintiff's decedent. Plaintiff has summarized these contentions in her response to PSR's motion for summary judgment (Doc. 87, page 1):

1. Failure to properly diagnosis decedent Griffith's emergency medical condition;

2. Failure to provide for an appropriate medical screening examination, and/or;

3. By discharging decedent Griffith before his emergency medical condition had been stabilized.

Each of these allegations clearly relates to actions and decisions taken and made by Dr. McCormick in his capacity as a medical doctor. Plaintiff has pointed to no facts, or any dispute regarding facts, which suggest that PSR exercised any right control over these actions and decisions or in any other manner in which Dr. McCormick provided care and treatment to plaintiff's decedent. For example, there are no facts which indicate, or even infer, that PSR instructed Dr. McCormick regarding how to diagnose plaintiff's decedent's condition or decide whether or not plaintiff's decedent should have been kept in the hospital or discharged. On the contrary, the undisputed facts are that the decisions made by Dr. McCormick in connection with his care and treatment of plaintiff's decedent were decisions he alone made without input of any kind from PSR. The question here is not whether Dr. McCormick was negligent in making those decisions but whether PSR exercised any right of control over those decisions. It is not up to the court to search the record to determine whether such facts exist or to speculate that they might be shown should the case go to trial.

In its motion, PSR has cited *Johns v. Jarrard*, 927 F.2d 551 (11th Cir.1991), a case which bears directly on the issues in this case, both factually and in terms of legal analysis. In her response, plaintiff has not made any effort to distinguish *Johns* or to cite contrary authority. Indeed, she has not even mentioned *Johns*. This is quite significant.

In *Johns*, a child was brought to a hospital where she was seen by an emergency room physician. Following treatment, the child died. The child's parents sued, among other defendants, Coastal Emergency Services, Inc. whose role in *Johns* is indistinguishable from PSR's role in this case. The district court sustained Coastal's motion for summary judgment, finding that Coastal was an independent contractor which could not be held vicariously liable for the negligence of the emergency room doctor. The court of appeals applied Georgia law pertaining to the distinction between an employee and independent contractor and affirmed. Georgia law and Kansas law on this subject appear to be identical.

■ The court finds that the undisputed material facts, viewed most favorably to plaintiff, show that the relationship between PSR and Dr. McCormick was that of independent contractor/contractee and therefore that PSR cannot be held liable for Dr. McCormick's negligence, assuming such negligence is proved, under the theory of *respondeat superior*.

Plaintiff has set forth another issue in response to PSR's motion: whether PSR was negligent in scheduling Dr. McCormick for a thirty-six hour shift which proximately caused or contributed to Griffith's death (Doc. 87, page 5). In a later and untimely pleading (Doc. 136), plaintiff has offered an excerpt from the deposition testimony of the decedent's mother who "guessed" that Dr. McCormick looked tired at the time he was treating the decedent and further that her husband apparently thought that Dr. McCormick looked "goofy." Plaintiff contends that PSR was under a general duty to exercise due care in using that "which it controls so as not to injure others" and that PSR negligently breached its duty to plaintiff's decedent by scheduling Dr. McCormick for a thirty-six hour shift in the emergency room. Plaintiff concludes by contending that PSR's negligent scheduling caused or contributed to the alleged misdiagnosis, improper screening and/or premature discharge which led to Griffith's death.

It is somewhat difficult to tell the theory of liability under which plaintiff is proceeding in connection with this claim. If her theory is grounded upon *respondeat superior* liability, then it must fail. On the other hand, if her theory is that PSR is liable because it breached some duty which it owed directly to plaintiff's decedent, then that theory too must fail because plaintiff's complaint is devoid of any claim made directly against PSR.

Finally, at oral argument, plaintiff conceded the correctness of PSR's claim that the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, does not apply to PSR.

Accordingly, PSR's motion for summary judgment (Doc. 76) is sustained.

IT IS SO ORDERED.