**Lawrence I. MILTON, Plaintiff,**

v.

**BOB MADDOX CHRYSLER PLYMOUTH, INC., and Donny Brown, Defendants.**

Civ. A. No. 493–299.

United States District Court,
S.D. Georgia,
Savannah Division.

Oct. 3, 1994.

---

Laura Jean Tromly, Adams, Gardner & Ellis, Savannah, GA, Elizabeth F. Bunce, Franklin, Taulbee, Rushing & Bunce, Statesboro, GA, for plaintiff.

John W. Hendrix, Hendrix & Sanders, Richard L. Roble, Richard Roble, P.C., Abda Lee Quillian, Savannah, GA, for defendants.

## *ORDER*

EDENFIELD, Chief Judge.

Plaintiff Milton brought suit against Defendants Maddox Chrysler and Donny Brown for discrimination on the basis of a disability

and intentional infliction of emotional distress. Defendants here move for summary judgment, arguing that Milton does not meet the requirements of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (1991) ("ADA"), and so this Court lacks federal question jurisdiction, 28 U.S.C. § 1331 (1990), and, consequently, supplemental jurisdiction, 28 U.S.C. § 1367 (1990), over his state law tort claim. *See id.* § 1367(c)(3). For reasons discussed below, the Court **DENIES** Defendants' motion for summary judgment.

## I. Summary Judgment Standard

The purpose of summary judgment is to explore the available evidence to determine whether there is a genuine issue of material fact requiring a trial. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment is granted when no such issue is discovered and the Court finds the movant entitled to judgment as a matter of law. *Great Lakes Dredge & Dock Co. v. Miller*, 957 F.2d 1575, 1578 (11th Cir. 1992), *cert. denied, Chevron Transport Corp. v. Great Lakes Dredge & Dock Co.*, —— U.S. ——, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Summary judgment is appropriate only when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Tidmore Oil Co. v. BP Oil Co.*, 932 F.2d 1384, 1387–88 (11th Cir.), *cert. denied*, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).

After the movant successfully discharges his initial burden of demonstrating an absence of material issues of fact, *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53, the burden shifts to the nonmovant to establish, by going beyond the pleadings, that there indeed exists an issue material to the nonmovant's case. *Thompson v. Metropolitan Multi–List, Inc.*, 934 F.2d 1566, 1583 n. 16 (11th Cir.1991). A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Andersen v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmovant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Id.* at 257, 106 S.Ct. at 2514. If the nonmovant's response to the summary judgment motion consists of nothing more than conclusory allegations, the Court must enter summary judgment for the movant. *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989). The minimum showing is of "specific facts showing that there is a genuine need for trial," *Johns v. Jarrard*, 927 F.2d 551, 555 (11th Cir.1991), *reh'g denied*, 935 F.2d 1297 (citation omitted); the nonmovant may not rely solely on the pleadings. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Where the parties' factual statements conflict or inferences are required, the Court will construe the facts in a light most favorable to the nonmovant. *Barnes v. Southwest Forest Industries*, 814 F.2d 607, 609 (11th Cir.1987).

A proper summary judgment motion may be opposed with any of the evidentiary materials listed in Fed.R.Civ.Proc. 56(c). The Court may consider pleadings, "depositions, answers to interrogatories, admissions on file, affidavits, oral testimony, matters subject to judicial notice, stipulations and concessions, and other materials admissible in evidence or otherwise usable at trial." *Clay v. Equifax, Inc.*, 762 F.2d 952, 956 (11th Cir.1985); Fed.R.Civ.Proc. 56(c). In assessing the evidence before it, the Court must avoid weighing conflicting evidence, *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513–14, or making credibility determinations. *Id.* at 255, 106 S.Ct. at 2513–14; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir.1987). A mere "scintilla" of evidence, however, will not suffice to support the nonmovant's position. *See, e.g., Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

Both Defendants' motion and Milton's response focus on ADA threshold requirements and Milton's ability to meet them; neither makes reference to Milton's pending tort claim. The Court's analysis is likewise confined.

## II. The Facts

The following facts are clear from the record and appear undisputed:

Because of a rare cancerous tumor caused by bronchial cancer, Lawrence Milton underwent surgery in 1984, resulting in the removal of his left lung. This loss affected his ability to breathe and to perform strenuous physical tasks, although he was not barred from participating in any particular activities. There are no outward signs of Milton's physical impairment, except potentially a shortness of breath.

Milton is a mechanic by trade. Bob Maddox Chrysler Plymouth, Inc., operates an automobile repair shop in Savannah, at which Donny Brown was a supervisor during the time of the incident in question. Milton began working for Maddox on June 1, 1983, as a "driveability technician," and was a valuable employee. He was responsible for insuring that in-service vehicles were repaired and running properly before releasing them to their owners. Maddox cultivated Milton's talents by sending him to various training schools and seminars. Many persons, including colleagues and management personnel, were aware of Milton's physical impairment, but it did not appear to affect his daily activities and responsibilities. He continued in his capacity as a mechanic until his dismissal on November 6, 1992.

The event precipitating Milton's dismissal was a thorough cleaning and painting of the garage in which the mechanics worked. It began on Thursday, November 5, 1992, and continued through the next day; all shop personnel were required to assist in the clean-up. Part of this process required the use of muriatic acid—a particularly noxious cleaning agent emitting particularly noxious fumes—and a host of other odious fluids. During the second day of scouring and repainting the work area, Milton contends that he twice during the day alerted Donny Brown, his supervisor, that he was not feeling well due to inhaling fumes and vapors. This discomfort culminated in Milton asking Brown at 5:00 pm if he could be allowed to leave for the day. It was not uncommon for employees such as Milton to leave at this time. Mr. Brown responded by handing Milton a paint roller and asking him to assist Brown and the others in painting the garage. Milton declined, and was informed that if he left, he would be fired. Milton left. He was fired.

Maddox and Brown argue that Milton did not alert Brown on two occasions that he felt ill, and had at no time in the past asked for assistance on the basis of his breathing difficulties. They observe that Milton spent much of his spare time—and perhaps some of his work time—building and repairing race cars, implying that he had no difficulty performing the various tasks required of a mechanic. Defendants further assert that Milton's attitude toward work had begun to deteriorate about six months before his dismissal, and that this slow decline, not any perception of Milton's impairment, motivated Brown's intolerance of Milton's refusal to clean up. Milton disputes the charge, and presents deposition testimony rebutting any claims that his work had begun to slip.

On the evening of November 6, Milton admitted himself to the Emergency Room of Memorial Medical Center because of continued breathing difficulties. On the following Monday, he returned to the shop and spoke with Edward Hoover, President and owner of Maddox Chrysler, "in an attempt to salvage his job." Pltf. Resp. to Def. Mtn. for Sum. Judg., at 7. It is unclear exactly what was said at this meeting: Defendants say that Hoover offered to return Milton to work, but Milton declined. Milton claims that Hoover referred him to Brown, who refused to reinstate the mechanic. Approximately two months later, Milton began working for another repair shop in Savannah.

Milton filed a Workers' Compensation claim on November 11, 1992, which was settled on April 4, 1994, for slightly over $ 8000. The terms of the settlement barred Milton from pursuing all other claims against Maddox except the instant suit. On December 14, 1992, Milton filed an Equal Employment Opportunity Commission complaint, and a right to sue letter was issued on September 27, 1993. On November 11, 1993, this suit was filed.

## III. Analysis

Defendants seek summary judgment on the grounds that Milton is not a "qualifying disabled individual" pursuant to the ADA, and so may not seek relief in federal court under its provisions. In support of this argument, they seek to establish that Milton has no difficulty working, despite his impairment: he secured employment in another repair shop two months after his dismissal from Maddox, and himself admitted by deposition that he is able to perform all functions required of him, if at a slower than usual pace. Thus, he is not "disabled." For his part, Milton argues that his bronchial deficiency substantially limits his pursuit of the major life activity of breathing, he has a record of disability, and was perceived by his co-workers as having a disability, each of which qualify him for protection under the ADA. He claims that Maddox Chrysler and Donny Brown failed to accommodate his disability and so violated the statute. Because the Court finds questions of fact as to whether Milton can meet the ADA definition of "qualified disabled individual," the Court declines to grant summary judgment. The Court does not address the merits of Milton's actual claim of discrimination, but only his standing to bring it.

There is precious little precedent in this circuit explaining or embellishing the provisions of the ADA, a statute recently passed by Congress to discourage discrimination against disabled persons in the workplace. Cases decided under the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. (1993) do provide some illumination, *see Interpretive Guidance on Title I of the Americans with Disabilities Act*, 29 C.F.R. § 1630, Appendix at 402 (1993) (noting congressional intent to rely on cases interpreting the Rehabilitation Act in reviewing ADA claims), and the ADA itself, in conjunction with regulations and interpretive commentary, is also an ample source of guidance. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; ... a record of such impairment; ... or being regarded as having such impairment." 42 U.S.C. § 12102(2). A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). Only "qualified individuals with disabilities" are protected by the ADA.

There is no doubt that Milton is "qualified" to perform the "essential functions" of his position; the parties agree that he worked as a mechanic both before and after his dismissal. As for a cognizable "disability," the Court first notes that Milton clearly has a "physical impairment." Regulations clarifying the ADA definition of that term explicitly encompass anatomical losses involving the respiratory system. *See* 29 C.F.R. § 1630.2(h). The terms "substantially limits" and "major life activities," however, present factual difficulties that prevent us from granting summary judgment in this case. Especially when considered in a light most favorable to Milton, this Court cannot say as a matter of law that he is unable to meet these requirements. Regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i). Milton's impairment, prima facie, falls within this definition. Regulations define "substantially limits" as

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

The Appendix to the ADA regulations further emphasizes the need to compare the individual in question with the average person in the general population. *Id.* at Appendix, at 403–04.

There is no dispositive evidence on the issue of whether Milton's ability to breathe is "substantially limited." From the definition above, that conclusion certainly cannot be ruled out; he may easily argue that the

conditions and manner of his breathing are substantially limited vis a vis the average individual. Defendants emphasize on more than one occasion that Milton himself admits that he is able to engage in the same activities now as he did before his operation in 1984, Milton Dep., at 39, and that he continues to repair automobiles and work on race cars. *See* Def. Rebuttal Brief, at 5–6. This evidence is the crux of Defendants' argument that Milton is not "disabled," but simply because Milton is able to work, the Court may not conclude, *ipso facto*, that he is not "disabled." Milton's ability to work comprises convincing evidence only on the issue of whether that particular major life activity has been affected by his physical condition. *See* 29 C.F.R. § 1630.2(j)(3)(ii) (discussing work as a major life activity). *See also E.E. Black, Ltd., v. Marshall*, 497 F.Supp. 1088, 1099–1100 (D.Haw.1980) (seminal case analyzing the definition of "handicapped" under the Rehabilitation Act with regard to "substantially limiting the ability to work").

Under the ADA a plaintiff may claim substantial limitations on any number of major life activities beyond his or her job performance. Defendants provide *no* compelling evidence relating to limitations on these other major life activities, except for occasional deposition testimony of co-workers that Milton had no discernable difficulty breathing on the job. *See, e.g.,* Hoover Dep., at 39–40; Brown Dep., at 69. Meanwhile, there is also deposition testimony to the opposite effect. *See, e.g.,* Mock Dep., at 32. If Milton's physical impairment rendered him substantially limited in the major life activity of breathing, and Defendants summarily dismissed Milton in response to his ailment when it could have been easily accommodated by a dispensation, then Defendants violated the statute. *See* 42 U.S.C. § 12112(a).

Conditions apparently less severe than Milton's have been held to meet ADA or Rehabilitation Act requirements in the past. *See, e.g., Guice–Mills v. Derwinski*, 967 F.2d 794, 797 (2d Cir.1992) (finding that nurse suffering from depression and migraine headaches is "handicapped" under Rehabilitation Act); *Harmer v. Virginia Electric & Power Co.*, 831 F.Supp. 1300, 1306 (E.D.Va.

1993) (considering plaintiff's bronchial asthma a "disability" under the ADA for purposes of deciding if employer failed to reasonably accommodate plaintiff by refusing to ban smoking in plaintiff's work area); *Watson v. United States*, 1985 WL 9646 (D.D.C.) (holding that plaintiff with "obstructive airway disease" and "symptoms of fatigue, headaches and myalgias" is "handicapped" under the Rehabilitation Act). The Court does not here rule that Milton's condition satisfies ADA requirements; the cases above are merely illustrative of the potential breadth of the relevant ADA provisions. There remain factual issues as to just how impaired Milton's breathing capacities are, and our investigation is not assisted by the fact that none of the eleven depositions taken in this case are fully on file with the Court. In light of explicit statutory language, see supra, Milton could convince a reasonable trier of fact that he is "disabled" within the purview of the ADA, and he has presented specific evidence on this issue. *Cf. Welsh v. City of Tulsa*, 977 F.2d 1415 (10th Cir.1992) (affirming grant of summary judgment where plaintiff presented no specific evidence demonstrating a genuine issue for trial on whether his physical impairment substantially limited a major life activity). The Act is intended to preserve equal opportunities for disabled Americans in the workplace. Until the ramifications of Milton's condition are fully known, the Court cannot say that he is not "disabled."

Finally, Milton may qualify for ADA coverage via another route. If he can demonstrate that he was simply *regarded* by his colleagues as having a physical impairment substantially limiting a major life activity, and that this perception led to his dismissal, the ADA applies. 42 U.S.C. § 12102(2)(C) (defining disability). *See* 29 C.F.R. § 1630.2(g)(3) (same); *id.* § 1620.2(1) (defining the term "is regarded as having such impairment" as means of qualifying as "disabled" under the ADA); *id.* at Appendix, at 405 (further explaining term). Milton need not have actually been disabled to take advantage of this provision, and the parties agree that Milton's employers and co-workers believed that Milton had a physical impairment. *See* Def.Sum.Judg.Mtn., at 16–17;

Pltf. Resp. to Sum. Judg. Mtn., at ¶ 6. Defendants have not addressed this potential basis for standing to sue under the ADA, and it cannot be disposed of on the current record.

## V. Conclusion

The record is insufficient to find as a matter of law that Plaintiff does not meet the threshold requirements of the Americans with Disabilities Act. The motion for summary judgment is **DENIED,** as well as Defendants' request for a hearing upon it.

SO ORDERED.