## 62934. CITY OF ATLANTA v. WHATLEY.

McMurray, Presiding Judge.

On or about July 11, 1978, Leon Harmon was a Comprehensive Employment and Training Act (CETA) funded employee with the City of Atlanta, Department of Sanitation. At that time he was driving a truck with a street clean-up work detail driving directly from a clean-up site to the city dump for unloading. He was living with his grandmother, and on this date at approximately noon he stopped at his grandmother's home to get a sandwich. The dump truck he was driving had a gross weight of 24,000 pounds, or more. He had what is called a regular driver's license. He parked the truck with the intention of getting some lunch. Same was parked on the wrong side of the street, Harmon contending he turned the wheels to the left, put on the brakes and left it on the street in the residential neighborhood. As he returned to the front door he heard people yelling, and the truck was rolling down the street partly on the sidewalk and partly in the street. The truck had been parked on a slight incline up the hill slightly from his grandmother's driveway. The truck jumped a hedge on his grandmother's property and hit a dwelling house knocking down brick in the foundation and cracking the wall. One of the occupants, Ms. Beverly Whatley, became hysterical and an ambulance was called for her.

Contending she was injured when the truck entered the dwelling house, Beverly Whatley, as claimant, by and through her attorney, filed the ante litem notice with the city, seeking damages for personal injury resulting from the negligence of the driver, Leon Harmon, claiming she suffered damages including physical injury, temporary total disability, the possibility of permanent partial disability and physical, mental and emotional pain and suffering, demanding a sum of $250,000.

Receiving no recompense from the city, Beverly Whatley, as plaintiff, sued both Leon Harmon, the driver, and the City of Atlanta, as defendants, setting forth, in substance, that she was injured by the reason of the incident occurring on July 11, 1978, in which she "suffered great physical pain and mental anguish" and became "permanently partially disabled," seeking compensatory damages in the amount of $250,000, attaching a copy of the ante litem notice to the city. By the amendment to her suit she added a Count 2 that the defendant driver had been negligently entrusted with the vehicle by the defendant City of Atlanta at which time he was an individual unfit to be entrusted with the vehicle, the city having ample knowledge of his unfitness, and the city did not have hiring procedures reasonably calculated to avoid negligently entrusting the

vehicle to the defendant.

The defendants answered, inter alia, denying the claim and contending the city was in the performance of its governmental function, admitting only jurisdiction, and in a separate defense pleaded governmental immunity as a municipal corporation of the State of Georgia, contending the claimed injury occurred during the course of its performance of a governmental function, and denying any liability exists for this reason.

After considerable discovery it was admitted that the vehicle did strike the dwelling as disclosed above as to the circumstances with reference to the vehicle which had been driven by the defendant driver. The city set forth that it was exempt from the Georgia Motor Vehicle Accident Reparations Act, admitting, however, that it was remunerated for sanitary and trash pick-up by assessment and collection of "a sanitary service charge for sanitary and trash pick up." Also in the record is a certified copy of Section 7-3017 (self-insurance; payments for damages; partial governmental immunity waived) of the code of ordinances of the City of Atlanta. This ordinance states that under the authority of Ga. Laws 1970, Vol. II, pp. 3207, 3208, the city elects to become "a self-insurer" under the provisions of Code Ann. § 56-2437 (Ga. L. 1960, pp. 289, 673) and does "waive governmental immunity" to the extent and in accordance with the following: payments for damages on account of bodily injury to any person which shall not exceed "the total amount of $1,000 in any one incident or collision arising by reason of the ownership, maintenance, operation or use of any motor vehicle by the city under its management, control or supervision in a governmental undertaking." Another certified extract of the Code was presented relevant to the function and duties of the sanitation department and also as to the removal of rubbish.

Prior to the admissions and presentation of certain other evidence, the plaintiff had moved for summary judgment. Likewise, the defendant city moved for partial summary judgment with reference to the certified copies of ordinances one of which disclosed that the city had waived its governmental immunity only to the extent of $1,000 as shown above, seeking "partial judgment in its favor." After a hearing as to both motions the trial court denied same. The trial court thereafter issued a certificate of appealability as to the defendant city, and an application for interlocutory appeal was granted by this court; and the defendant city appeals. *Held:*

As its enumeration of error the defendant city contends that "[t]he trial court erred in failing to grant Appellant's Motion for Partial Summary Judgment by misconstruing and misapplying controlling authority and failing to find that no genuine issue of

material fact existed as to whether the City was engaged in the performance of its governmental functions at the time of the incident of which Appellee complains."

Code § 69-301 sets forth that municipal corporations are not liable for failure to perform, or for errors in performing, their legislative or judicial powers but shall be liable for neglect to perform, or for improper or unskilled performance of their ministerial duties. While pleading that it was not liable for the performance of its governmental duty of collecting trash the city has shown as evidence in its application for partial summary judgment that it would be liable for up to $1,000 by reason of waiver of its governmental immunity in this amount. The city did not plead the case in accordance with Code Ann. § 56-2437, supra, but admits to the court by summary judgment its liability up to $1,000. See in this connection *Dowling v. Camden County,* 113 Ga. App. 34 (1) (146 SE2d 925).

Generally, removal of garbage and trash and other health and sanitation measures protecting the health and welfare of the public are considered governmental functions. See *Mayor and Aldermen of Savannah v. Waters,* 33 Ga. App. 234, 235 (125 SE 772); *Cason v. Columbus, Ga.,* 148 Ga. App. 208, 209 (250 SE2d 836); *Foster v. Crowder,* 117 Ga. App. 568 (161 SE2d 364); *Tory v. City of Atlanta,* 128 Ga. App. 155 (195 SE2d 923). However, "cleaning up the street" in a "cleanup campaign" (testimony of defendant Harmon) might include both health and sanitation, as well as "maintaining ... streets and sidewalks to keep them safe for travel," a ministerial function. See *Hammock v. City Council of Augusta,* 83 Ga. App. 217, 218 (63 SE2d 290); and cases cited. See also *Hodges v. City Council of Augusta,* 90 Ga. App. 306, 309 (83 SE2d 36). But, in addition, the defendant city here admits it is remunerated for sanitation and trash pick-up, that is, "it assesses and collects a sanitary service charge for sanitation and trash pick-up," which involves a revenue source for the city. We do not know, from that evidence disclosed thus far, whether the city operates this particular endeavor as a break-even, a deficit or a profit making endeavor. It could well be that a portion of the revenues derived from this source are being used by the city to finance in part other city operations. Thus, there may be created an exception to the general rule that garbage and trash pick-up is generally a governmental function and may have become a quasi-public business, a ministerial function, by becoming a "source of revenue" instead of "a purely incidental profit." See *Cornelisen v. City of Atlanta,* 146 Ga. 416 (1), (2) (91 SE 415). Accordingly, under the particular evidence before us, as we cannot speculate what the entire evidence would disclose, we cannot hold that it demands a finding that this incident resulted from a governmental function

rather than a ministerial one. The evidence must be construed most strongly in favor of one who opposes the motion for summary judgment. *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 4 (126 SE2d 442).

*Judgment affirmed. Quillian, C. J., and Pope, J., concur.*

DECIDED MARCH 17, 1982.

*Marva Jones Brooks, Gary S. Walker,* for appellant.
*Ronald L. Hilley, William T. Payne,* for appellee.