A90A2160. CONNOLLY v. STATE OF GEORGIA.
(406 SE2d 222)

BEASLEY, Judge.

The present case concerns OCGA § 44-3-143 (d), which was enacted as part of the Georgia Cemetery Act of 1983. OCGA § 44-3-130 et seq.

State statutory provisions regulating the operation of cemetery companies were originally enacted in 1969. (Ga. L. 1969, p. 242). With the enactment of the Official Code of Georgia in 1982, these statutory provisions became OCGA §§ 44-3-130 through 44-3-142. When the Georgia Cemetery Act of 1983 was enacted, the former Code sections were repealed and superseded by the provisions of the 1983 Act, which became OCGA §§ 44-3-130 through 44-3-152.

Under the 1983 Act, a "cemetery company," which is defined as a company which owns or controls cemetery lands or property and conducts the business of a cemetery, must obtain a certificate of registration from the Secretary of State. OCGA §§ 44-3-131 (5); 44-3-134 (a) (1). A "preneed dealer," which is defined as a company engaging in the retail business of dealing in burial merchandise which is not attached to realty or delivered to the purchaser at the time of sale, must also obtain a certificate of registration. OCGA §§ 44-3-131 (15); 44-3-134 (a) (1). Certificates of registration were likewise required under former OCGA § 44-3-136.

In order to ensure the availability of sufficient funds to provide for the perpetual upkeep of cemeteries, the 1983 Act requires perpetual care cemeteries to establish and maintain "an irrevocable trust fund." OCGA § 44-3-134 (c) (2). In order to ensure the availability of sufficient funds to obtain delivery of burial merchandise which has already been paid for but which is not required to be delivered until the future, preneed dealers must establish and maintain "a preneed escrow account." OCGA § 44-3-134 (e) (1). Prior to enactment of the 1983 Act, former OCGA § 44-3-132 (a) likewise required a perpetual care cemetery to establish and maintain an "irrevocable trust fund," and former OCGA § 44-3-141 required a cemetery company selling

burial merchandise to establish and maintain a "merchandise trust fund."

Under OCGA § 44-3-135 (e) (1) and (2), as enacted in 1983, upon the sale or transfer of a cemetery or preneed dealer, the Secretary of State shall not issue a certificate of registration to the purchaser until the purchaser submits proof that the perpetual care trust fund or preneed escrow account is adequately funded. Comparable provisions were contained in former OCGA § 44-3-141 (h) and (g).

In 1979, the General Assembly amended the 1969 Act by, among other things, enacting Code Ann. § 84-5112 (g) [OCGA § 44-3-141 (g)], which provided: "If the perpetual care [i.e., irrevocable] trust fund has not been set up as required, the assets of the company may be seized and sold by the State under orders of the court to the extent necessary to provide said perpetual care trust fund and set up the same. In addition, where the certificate of registration has been revoked, the whole company property may be ordered sold after the perpetual care trust fund has been set up, so that the purchaser of the cemetery may continue to operate the same and maintain it under the terms of this Act." The 1979 Act became effective April 17, 1979. Ga. L. 1979, pp. 1305, 1311.

With the enactment of the 1983 Act, OCGA § 44-3-141 (g) was repealed and superseded by OCGA § 44-3-143 (d), which provides: "In any civil proceeding brought under this Code section, if the Secretary of State shall establish that a perpetual care trust fund or preneed escrow account has not been established and maintained as required, the assets of the cemetery, cemetery company, or preneed dealer may be seized and sold by the state under orders of the court to the extent necessary to provide said perpetual care trust fund or preneed escrow account and set up same. In addition, where the certificate of registration has been revoked, the whole company property may be ordered sold after the perpetual care trust fund and preneed escrow account have been established so that the purchaser of the cemetery may continue to operate the same and maintain it under the terms of this article."

Thus, the 1979 Act authorized the Secretary, by an equity action in part in rem to seize and sell the assets of a cemetery company in order to provide and set up a perpetual care trust fund. The 1983 Act extended this authorization to preneed escrow accounts.

In 1986, the State filed such a complaint upon relation of the Secretary of State against Restlawn Memory Gardens, Inc., Marc Bluestein, and Harry Connolly.

Restlawn was incorporated by Connolly in 1969 for the purpose of operating a perpetual care cemetery. In 1979, Connolly sold the stock of Restlawn to Haynes who began operating the cemetery. In payment, Connolly accepted a promissory note in the principal

amount of $137,513 and a purchase-money security deed on the whole cemetery property. The security deed is dated August 28, 1979, approximately four months after the effective date of the 1979 Act.

In 1984, Bluestein purchased Restlawn. At that time the 1979 promissory note was in arrears. Connolly agreed to forebear from accelerating the note and instituting foreclosure proceedings in exchange for a new note in the amount of $112,000. This note was secured by the security deed and personally guaranteed by Bluestein.

When Bluestein began operating the cemetery in 1984, deficiencies existed in both the perpetual care trust fund and the preneed escrow account. Bluestein was granted a certificate of registration authorizing his operation of the cemetery as a perpetual care cemetery and preneed dealer, based on his agreement to establish the trust fund and escrow account and keep them adequately funded. He failed to comply, so the superior court, in a prior proceeding, appointed a temporary receiver to take charge of Restlawn's assets and solicit purchase offers. In an administrative proceeding Restlawn's certificate of registration was revoked.

The State alleges in its complaint that the temporary receiver was unable to find suitable purchasers for Restlawn because of Connolly's unwillingness to relinquish his security interest or institute foreclosure proceedings. Connolly states that he has not instituted foreclosure proceedings because of his belief that if he were the successful bidder at the sale, he would be forced to operate and maintain the cemetery, which he does not wish to do.

The question for decision is whether Connolly, as the grantee of the purchase-money security deed, has a superior lien on the proceeds derived from a sale of assets or of the whole company property pursuant to OCGA § 44-3-143 (d). The trial court granted summary judgment to the State, holding that "the security interest of defendant Connolly shall not take priority over the satisfaction of the deficiencies in the perpetual care trust fund and the preneed escrow account."

A purchase-money security deed operates as an absolute conveyance of title until the secured indebtedness is fully paid. OCGA § 44-14-60; see also OCGA § 44-14-321. It generally takes precedence over simultaneous or prior liens against the purchaser, but not prior liens against the property. See *Murray v. Chulak*, 250 Ga. 765, 770 (3) (300 SE2d 493) (1983). OCGA § 44-14-323 provides, "All liens which are not regulated and fixed as to rank by this title shall rank according to date, the oldest having priority."

OCGA § 44-3-143 (d) authorizes the Secretary of State to levy an execution on cemetery assets and company property and sell them in order to fund the perpetual care trust fund and preneed escrow account required by the Cemetery Act. Former OCGA § 44-3-141 (g),

which predated Connolly's security deed, so authorized the Secretary as to the fund but not as to the account. These statutory provisions, which operate as to property rights, in effect grant a lien on company assets and property but are silent concerning the rights and priorities of competing liens. Cf. OCGA § 48-2-56 (b) (1), providing that tax liens do not have priority as against a deed to secure debt where the rights of the holder of the security deed have attached prior to the filing of the notice of tax lien.

The purchase money security deed of which Connolly is grantee was executed on August 28, 1979. OCGA § 44-3-143 (d) in effect created a lien in 1983. Former OCGA § 44-3-141 (g) in effect created a lien on April 17, 1979.

Applying OCGA § 44-14-323, Connolly's security deed has priority over the statutory lien pertaining to the preneed escrow account but not to the perpetual care trust fund.

Other issues in this case are rendered moot. The challenge to the constitutionality of the statute was not preserved for review because a ruling was not obtained from the trial court. *Perry v. Md. Cas. Co.,* 216 Ga. 93 (115 SE2d 102) (1960).

*Judgment affirmed in part and reversed in part. Sognier, C. J., McMurray, P. J., Banke, P. J., Carley and Andrews, JJ., concur. Birdsong, P. J., Pope and Cooper, JJ., concur in part and dissent in part.*

Pope, Judge, concurring in part and dissenting in part.

The trial court in this matter ruled that upon seizure and sale of the land in question, pursuant to the authority granted to the Secretary of State by OCGA § 44-3-143 (d), the security interest of defendant Connolly shall not take priority over the right of the Secretary of State to satisfy the deficiencies in the perpetual care trust fund and the preneed escrow account. The majority opinion affirms the superior court only as to the statutory lien imposed by OCGA § 44-3-143 (d) on the perpetual care trust fund, but not as to the lien on the preneed escrow account. I would affirm this judgment in its entirety, and I dissent from the holding of the majority opinion that Connolly's security interest has priority over the statutory lien created by OCGA § 44-3-143 (d) on the preneed escrow account.

"In the exercise of the police power of the State, and in order to promote the public health and well-being, the legislature may pass reasonable regulations as to the establishment and operation of cemeteries." *Arlington Cemetery Corp. v. Bindig,* 212 Ga. 698, 702 (95 SE2d 378) (1956). Clearly, the legislative enactment of the Georgia Cemetery Act of 1983 (OCGA § 44-3-130 et seq.), including the requirements for maintaining a perpetual care trust fund and a preneed escrow account, was an exercise of that police power. It is only by the

terms of OCGA § 44-3-143 that the Secretary of State is given the power to enforce the rules concerning these two funds and thus to protect the public from irresponsible or unscrupulous operation of perpetual care cemeteries and preneed businesses. Consequently, OCGA § 44-3-143 (d) must be interpreted as a statutory exception to the general rule granting priority to liens according to date. It matters not that the security deed granting Connolly a security interest in the land at issue in this case was executed before the enactment date of the statute creating a lien on the preneed escrow account.

I am authorized to state that Presiding Judge Birdsong and Judge Cooper join in this opinion.

DECIDED MARCH 29, 1991 —
REHEARING DENIED JUNE 6, 1991 — 

*Stroud P. Stacy II*, for appellant.

*Michael J. Bowers, Attorney General, Marion O. Gordon, First Assistant Attorney General, J. Robert Coleman, Deputy Attorney General, John B. Ballard, Jr., Senior Assistant Attorney General*, for appellee.