A92A1214. CITY OF ATLANTA v. CHAMBERS.
A92A1215. CHAMBERS v. CITY OF ATLANTA et al.
A92A1266. CITY OF ATLANTA v. BOWMAN.
(424 SE2d 19)

CARLEY, Presiding Judge.

A garbage truck owned by appellant-defendant City of Atlanta (City) and operated by one of its employees collided with another vehicle. The occupants of the other vehicle were seriously injured and one died. Appellee-plaintiffs filed suit, seeking to recover for the injuries and the death resulting from the collision. Appellees' suit was filed against the City and appellant-defendant Chester Funnye, the Commissioner of the City's Department of Public Works (Commissioner). After extensive discovery, the City and the Commissioner moved for summary judgment. The trial court granted the motion as to all theories of recovery except the City's vicarious liability for the alleged negligence of the driver of the garbage truck. As to that theory of recovery, the trial court found, "as a matter of law," that municipal immunity would not constitute a viable defense. In Case Nos. A92A1214 and A92A1266, the City appeals directly from the order on its municipal immunity defense. In Case No. A92A1215, appellee Chambers appeals directly from the order granting summary judgment to the City and the Commissioner.

## Case Nos. A92A1214 and A92A1266

1. When considering a motion predicated upon a plea of abatement, such as a motion to dismiss pursuant to subsections (1), (2), (3), (4), (5) or (7) of OCGA § 9-11-12 (b), a trial court is authorized to resolve disputed factual issues. *Metric Steel Co. v. BLD Constr. Co.*, 147 Ga. App. 380, 383 (249 SE2d 121) (1978). In the instant case, however, the City's motion was clearly not predicated upon a plea of abatement. The City moved for summary judgment based upon its defense of municipal immunity. Municipal immunity is an affirmative defense, such as the statute of limitations, which asserts a bar to recovery and not merely the abatement of an action. *Peeples v. City of Atlanta*, 189 Ga. App. 888, 889 (1) (377 SE2d 889) (1989). Accordingly, municipal immunity goes to the merits of a recovery and is a proper issue for disposition by motion for summary judgment. On motion for summary judgment, however, the trial court is not authorized to resolve disputed factual issues. Accordingly, summary judgment in the instant case would not be proper unless no genuine issue of disputed material fact remained for jury resolution as to the City's municipal immunity defense. See *City of Atlanta v. Whatley*, 161 Ga. App. 705 (289 SE2d 541) (1982).

The trial court did not grant summary judgment as to appellees' ultimate recovery under their vicarious liability theory. However, insofar as the trial court held that, "as a matter of law," municipal immunity would not constitute a viable defense to that theory of recovery, it is clear that the trial court, in effect, granted partial summary judgment in favor of appellees and against the City as to that defense. Accordingly, the grant of summary judgment was directly appealable by the City. See *Howell Mill/Collier Assoc. v. Pennypacker's, Inc.*, 194 Ga. App. 169 (1) (390 SE2d 257) (1990); *Peeples v. City of Atlanta*, supra at 889 (1). That grant of summary judgment in favor of appellees would be proper if, but only if, no genuine issue of disputed material fact remained for jury resolution as to the non-viability of the City's municipal liability defense.

2. "[T]here is no disagreement that in general 'the collection of garbage is a governmental function, for the performance of which a municipality is granted immunity from liability for the negligent acts of its officers and employees.' [Cit.] One exception to this general rule may arise where a city operates a garbage collection service primarily as a business enterprise and source of revenue, rather than primarily as a public service. [Cits.]" *Smith v. Mayor of Savannah*, 185 Ga. App. 708 (365 SE2d 529) (1988).

In support of its motion, the City introduced evidence which, if uncontradicted, would demand a finding that its garbage collection service was operated primarily as a public service and not as a source

of revenue. That evidence shows that, pursuant to its charter and ordinances, the City operated its garbage collection service without a profit motive and that garbage collection fees were set at a rate intended merely to offset the expenses of providing that service rather than to generate revenue for the City's use in funding other activities. *City of Valdosta v. Bellew*, 178 Ga. App. 423 (343 SE2d 111) (1986). "Whether the enterprise turns a profit, or only an incidental profit ([cit.]) is not the controlling point; what is significant is the character of the [enterprise] as 'primarily a source of revenue' rather than being used primarily for the benefit of the public regardless of incidental generation of revenues." *Cleghorn v. City of Albany*, 184 Ga. App. 732, 735-736 (1) (362 SE2d 386) (1987).

In opposition to the City's motion, appellees submitted the affidavit of an expert who opined that, if the City employed a different accounting method other than that which the City actually employed, it was possible to derive a different figure as to the profitability of the City's garbage collection service. Obviously, different accounting methods will potentially result in different figures for profitability. However, the affidavit of appellees' expert does not suggest that the accounting method employed by the City is in any way improper. Moreover, it is not the accounting method employed, but the character of the garbage collection operation as primarily a source of revenue for the City or primarily a service for the benefit of the public that is controlling. Nothing in the affidavit of appellees' expert negates the evidence that, regardless of whether revenues may have exceeded expenditures or expenditures may have exceeded revenues in any given year, the over-all character of the garbage collection operation was as a service primarily for the benefit of the public, rather than primarily as a source of revenue for the City.

The affidavit of appellees' expert also suggests that there are certain mathematical or computational errors in the evidence submitted by the City regarding the revenues and expenditures attributable to its garbage collection operation. However, these purported errors are de minimis and likewise have no material bearing on the character of the City's garbage collection operation as either primarily a source of revenue or primarily a benefit for the public. The fact that the City had slightly higher revenues or slightly lower expenditures in any given year is not controlling. If public service is primary and profit only incidental, the City has municipal immunity. It is only when profit is primary and public service is incidental that there exists an exception to the general rule of municipal immunity for negligence resulting from the collection of garbage. *Smith v. Mayor of Savannah*, supra at 708.

Construing the evidence most favorably for appellees, they did not meet their burden of producing evidence "that would take the

garbage collection service outside a governmental function and convert it into a ministerial one. [Cit.]" *City of Valdosta v. Bellew*, supra at 426. The City employee's act of driving the garbage truck was "exclusively and inextricably intertwined with the garbage collection function of the [C]ity. . . . [It] was so closely associated with the garbage collection function that[, so long as the City did not perform that function primarily as a source of revenue,] the [C]ity was immune from suit by virtue of performance of a governmental function. . . ." *City of Valdosta v. Bellew*, supra at 425. See also *Love v. City of Atlanta*, 95 Ga. 129, 134 (22 SE 29) (1894).

3. "[C]hallenge[s] to the constitutionality of the statute [providing for municipal immunity, OCGA § 36-33-1, and the City's ordinance waiving such immunity to the extent of $1,000 per claim were] not preserved for review because [rulings were] not obtained from the trial court. [Cit.]" *Connolly v. State of Ga.*, 199 Ga. App. 887, 890 (406 SE2d 222) (1991).

4. The City does not enumerate as error the denial of its motion for summary judgment. Accordingly, all we hold in the instant cases is that the trial court erred in granting summary judgment in favor of appellees as to the City's municipal immunity defense.

### Case No. A92A1215

5. The trial court's grant of summary judgment in favor of the City as to the nuisance theory of recovery is enumerated as error.

" 'A municipal corporation, like any other individual or private corporation, may be held liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or municipal function.' . . . Under [Supreme Court] guidelines . . ., there must be the *maintenance* of a *dangerous condition* on a *continuous* or *regular basis* over a period of time in which no action or inadequate action is taken to correct the condition *after knowledge thereof.*" (Emphasis supplied in part.) *City of Bowman v. Gunnells*, 243 Ga. 809, 810 (1) (256 SE2d 782) (1979).

Appellees were not injured as the proximate result of the City's creation or maintenance of a *dangerous condition*. They were injured as the proximate result of an *alleged act of negligent operation* of a garbage truck by a City employee. Appellees cannot recover against the City "by alleging that in employing [the garbage truck driver] and retaining him on the payroll it was guilty of maintaining a nuisance when the facts otherwise alleged affirmatively show that the real asserted basis of liability is on the theory of respondeat superior for [his] *tortious conduct.* . . ." (Emphasis supplied.) *City of Cumming v. Chastain*, 97 Ga. App. 13, 15 (102 SE2d 97) (1958). Compare *Hirsh v.*

*City of Atlanta*, 261 Ga. 22 (401 SE2d 530) (1991) (intentional creation of a dangerous blockade).

There is evidence that, at the time of the collision, the City's employee was in a dangerous condition, in that he was driving the garbage truck while under the influence of drugs and alcohol. However, even assuming that this state of intoxication were to be considered a dangerous condition such as could otherwise constitute a nuisance rather than mere tortious conduct, it was not a dangerous condition which was created by the City. The act of becoming intoxicated while on the job was obviously personal to the City's employee, and was certainly not in furtherance of his employment with the City. "[I]f the municipality did not perform an act creating the dangerous condition, . . . the failure of the municipality to rectify the dangerous condition must be in violation of a duty to act. [Cits.]" *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419, 426-427 (3i) (249 SE2d 224) (1978). There was no duty on the part of the City to initiate drug testing for its employees or to monitor them at all times to insure that they did not become intoxicated while on the job. "Where municipal corporations are not required by statute to perform an act, they may not be held liable for exercising their discretion in failing to perform the act." OCGA § 36-33-2.

There is evidence that the City did have a non-intrusive policy of identifying and removing employees who were suspected of substance abuse. However, there is no evidence that the City was somehow remiss in its implementation of this policy after it had the requisite knowledge of its employee's dangerous condition. There is evidence that the City employee had been previously charged with driving under the influence. However, that charge pre-dates the instant collision by some three years and it did not involve intoxication while on the job. There is also evidence that the City employee had been involved in prior traffic mishaps while on the job, but none involved intoxication. There is evidence that the co-employees of the City employee were previously aware that he would become intoxicated while off the job. There is, however, no evidence that the supervisors, who were responsible for implementation of the policy of identifying suspected substance abusers, were ever aware of the City employee's prior intoxication while on the job. The evidence shows that the first time that they ever became aware of his on-the-job intoxication was after the instant collision. Since the evidence shows that the City did *not* have prior knowledge of its employee's dangerous condition, it follows that the City cannot be held to have incurred liability for its alleged *maintenance* of that dangerous condition *after knowledge thereof.* See *Stanley v. City of Macon*, 95 Ga. App. 108, 111 (2a) (97 SE2d 330) (1957).

The courts have not "been able to give a precise legal definition

of nuisance that would apply to all situations. It has been said that pornography cannot be defined but you know it when you see it. A nuisance is in a similar category. While ordinarily whether a nuisance exists is a question of fact for a jury ([cits.]) under some factual situations it can be held as a matter of law that no nuisance exists." *City of Bowman v. Gunnells*, supra at 810-811 (2). "The grant of summary judgment [in the instant case] was correct as to the nuisance claim, because the factors set out in *City of Bowman v. Gunnells*, [supra at] 811 (2) . . . , did not exist here." *Robinson v. City of Decatur*, 253 Ga. 779 (3) (325 SE2d 752) (1985), overruled on other grounds, *Martin v. Ga. Dept. of Public Safety*, 257 Ga. 300, 303, fn. 1 (357 SE2d 569) (1987).

6. The trial court correctly granted summary judgment as to the claims for negligent retention of the City's employee and negligent entrustment of the City's garbage truck to him. "A municipality is immune from liability for the *negligent* performance of its governmental duties. . . ." (Emphasis supplied.) *Sinkfield v. Pike*, 201 Ga. App. 652, 653 (3) (411 SE2d 889) (1991). As held in Division 2, garbage collection by the City is a *governmental* function, for the *negligent* performance of which the City would be immune from liability.

7. The trial court correctly granted summary judgment in favor of the Commissioner. The acts and omissions of the Commissioner of which complaint is made involve a discretionary function of his office and he is immune from liability unless he acted with wilfulness, malice, fraud, or corruption. *Hennessy v. Webb*, 245 Ga. 329 (264 SE2d 878) (1980). " 'The record in the present case is utterly devoid of any conduct by [the Commissioner] which could remotely be construed as being sufficient to lift the shield that protects officers acting colore officii.' [Cit.]" *McDay v. City of Atlanta*, 204 Ga. App. 621, 622 (1) (420 SE2d 75) (1992). See also *Nelson v. Spalding County*, 249 Ga. 334, 337 (2b) (290 SE2d 915) (1982).

*Judgments reversed in Case Nos. A92A1214 and A92A1266. Judgments affirmed in Case No. A92A1215. Pope and Johnson, JJ., concur.*

DECIDED SEPTEMBER 24, 1992 —
RECONSIDERATION DENIED OCTOBER 16, 1992 —

*Michael V. Coleman, Kendric E. Smith, Lisa E. Steinmetz*, for City of Atlanta.
*Elizabeth J. Appley, Ralph S. Goldberg*, for Chambers.
*Bates, Baum & Landey, Beverly B. Bates*, for Bowman.