Lydia P. **MUNN**, Plaintiff,

v.

The **MAYOR AND ALDERMEN OF the CITY OF SAVANNAH, GEORGIA,** Defendant.

Civ. A. No. CV 495–68.

United States District Court, S.D. Georgia, Savannah Division.

Oct. 26, 1995.

1578

Paul W. Painter, Jr., Savannah, GA, Dale
E. Akins, Hilton Head, SC, for Plaintiff.

Abda Lee Quillian, Savannah, GA, James
Blackburn, Savannah, GA, for Defendant.

## ORDER

MOORE, District Judge.

Plaintiff filed suit against Defendant alleging that one of its higher ranking police officers sexually harassed her during her course of employment. Defendant has moved for Summary Judgment as to all counts of Plaintiff's complaint. Pursuant to this Court's Order of September 27, 1995, dismissing Count II of Plaintiff's Complaint, this motion is **DISMISSED AS MOOT** as to that count. For the reasons stated herein, this Court **GRANTS IN PART AND DENIES IN PART** this motion as to Plaintiff's Title VII cause of action (Count I) and **DENIES** this motion as to Plaintiff's state law claim for nuisance (Count III).

## FACTS

The facts giving rise to this cause of action were sworn to by Plaintiff in her October 10, 1995, Affidavit in Opposition to Defendants' Motion for Summary Judgment and her June 20, 1994, Charge of Discrimination and Affidavit filed with the Equal Employment Opportunity Commission (hereinafter "EEOC"). Correspondingly, the April 25, 1994, "confidential memorandum" of the city's Human Resources Department tracks these facts as averred by Plaintiff. The background summary below is drawn largely from these documents.[1]

Plaintiff began working with the Savannah Police Department (hereinafter "SPD") on January 4, 1988. Soon after commencing work, Plaintiff was assigned to patrol duty under the supervision of Lt. Dwight Williams, the alleged sexual harasser in this case. In or around May 1988, Lt. Williams began making sexual remarks to Plaintiff. Plaintiff states:

> Among the remarks, he talked about how well my uniform fit my body, about how he liked the way I walked, about how sexy I was, about how he wanted to have an affair with me, and about how he wanted me to come to his house to have sex with him. On one occasion, he commented that he wanted me to sit on his face.... Lt. Williams made remarks of this type to me on a regular basis until I was transferred to another section of the [SPD] ... for reasons unrelated to his conduct. He also told me that my husband was having an extramarital affair and that I should have one with him.

(Pl.['s] Aff. in Opp. to Def.['s] Mot. for Summ. J. ¶ 3.) During this time, Lt. Williams offered Plaintiff gifts and money in what she believes were attempts to receive sexual favors.

Between April 1991 and June 1993, Plaintiff did not work under the command of Lt. Williams and she had little contact with him. When the SPD promoted her to sergeant in July 1993, it placed her in Precinct One under the immediate supervision of Lt. Williams. Within a month, Lt. Williams resumed making the same type of remarks he had made between 1988 and 1991. Apparently, Lt. Williams would often call Plaintiff on the police radio and instruct her to meet him at various locations and, at times, he would make sexual advances toward Plaintiff after she arrived for the arranged meetings. One February 22, 1994, Lt. Williams contacted Plaintiff on the radio and instructed her to meet him at a location away from the precinct station. Plaintiff alleges: "When I arrived at the location, he told me to get out of my police car. After I got out of the car, he addressed me at length about how much he wanted to have sex with me and an affair with me." (*Id.* ¶ 5.) On February 24, 1994, Plaintiff reported this conduct to Captain Dwane Ragan and Chief David Gellatly of the SPD.

The matter was referred to the Internal Affairs Department of the SPD and a formal complaint was filed. The situation was eventually brought to the attention of Sheryl Phillips of the city's Human Resources Department who then conducted an inquiry.[2] Dur-

---

1. This Court does not adjudicate these facts as uncontested. Instead, as all factual inferences must be drawn in favor of the nonmovant in a summary judgment action, *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992), these facts are illustrated simply to give context to both parties' legal arguments.

2. Apparently, Chief Gellatly did not follow the city's stated sexual harassment procedure be-

ing this investigation, it became apparent that Plaintiff's allegations of sexual harassment by Lt. Williams were not the first the Defendant had received. Although no one pursued the allegations to the extent Plaintiff has, Defendant may have had knowledge of Lt. Williams' alleged sexual harassments of Officer Katrina Hughes and Probationary Officers Michelle Mobley and Linda Green as well as inappropriate behavior toward Officer Maria Thompson. (Phillips depo., pp. 77–90.) The Defendant apparently took no disciplinary action regarding these incidents occurring between 1986 and 1993. (*Id.*) After interviewing Plaintiff, Lt. Williams, and a host of SPD officers and employees[3], Phillips stated: "Based on the inquiry, it is the determination of this office that the complaint is sustained." (Pl.['s] Ex. B cover page.) Phillips then recommended that "Lt. Williams be removed from any position with any supervisory capacity." (*Id.* p. 14.) Chief Gellatly did not follow Phillips' recommendation but, instead, suspended Lt. Williams for thirty days without pay and referred him for psychological examination. (Phillips depo., p. 111.)

Though Lt. Williams and Plaintiff are now in different precincts, Plaintiff is under his supervision when both officers have weekend duty. Plaintiff does not contend that Lt. Williams has harassed her since February 24, 1994.

Plaintiff filed her complaint stating theories of recovery under 42 U.S.C. § 1981a and 42 U.S.C. § 2000e–5 (Title VII sexual harassment) as well as under the Georgia tort law theories of negligent retention and nuisance. This Court on September 27, 1995, dismissed Plaintiff's negligent retention count. Having read and examined the positions of the parties, this Court now considers Defendant's Motion for Summary Judgment.

cause he himself did not refer the matter to Phillips, the Director of Human Resources. Counsel for the Defendant, however, found out about the allegations and properly reported them to Phillips. (See Sheryl Phillips Depo., August 8, 1995, pp. 43–45, 62–64.)

## ANALYSIS

### I. *When Summary Judgment is Appropriate.*

Summary judgment will be rendered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED.R.CIV.P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting FED.R.CIV.P. 56 advisory committee's note). This Court's analysis ends "where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law." *Great Lakes Dredge & Dock Co. v. Miller,* 957 F.2d 1575, 1578 (11th Cir.1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.,* 932 F.2d 1384, 1387–88 (11th Cir.1991), *cert. denied,* 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991). The substantive law governing the action determines whether an element is essential. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499, 1505 (11th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990).

**3.** Those interviewed include: Sgt. Richard Zapal; Officer Kristina Mayes; Sgt. Kenneth White; Officer Katrina Mobley Hughes; Lt. Claire McCluskey; Capt. Dwane Ragan; Sgt. George Hucks; Sgt. Phillip Reilly; Maj. Ralph Bashlor; Maj. Dan Reynolds; and Officer Maria McPhearson Thompson.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Thompson v. Metropolitan Multi–List, Inc.*, 934 F.2d 1566, 1583 n. 16 (11th Cir.1991).

A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. If the nonmovant's response to the summary judgment motion consists of nothing more than mere conclusory allegations, then this Court has no choice but to enter summary judgment in the moving party's favor. *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [then] there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512; *Johns v. Jarrard*, 927 F.2d 551, 556 (11th Cir.1991).

In assessing whether the movant is entitled to summary judgment in its favor, the district court must review the evidence and reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992); *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir.1991). This Court must avoid weighing conflicting evidence during this endeavor. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir.1987). A mere "scintilla" of evidence supporting the nonmovant's position, however, will not suffice to prevent the granting of summary judgment. *See, e.g. Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir.1989) (citation omitted).

II. *Title VII Claim for Hostile Work Environment Sexual Harassment.*

A. *Plaintiff May Not Recover for Pre–1991 Incidents.*

■ "Plaintiff concedes that she cannot recover direct damages for the harassment she suffered at the hands of Lt. Williams in the years 1988–1990." (Pl.['s] Resp. to Def.['s] Mot. for Summ. J. p. 17.) The law on this matter is quite clear as the Supreme Court last year held that the compensatory remedial measures of 42 U.S.C. § 1981a regarding sexual harassment are not to be applied to conduct which occurred prior to this 1991 amendment to Title VII. *Landgraf v. USI Film Products*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *see also Mills v. Amoco Performance Products, Inc.*, 872 F.Supp. 975, 985 (S.D.Ga.1994). Plaintiff properly does not contest this matter. This Court rules that Plaintiff may not recover for any alleged incidents of harassments which occurred prior November 21, 1991, the effective date of this remedial provision. 42 U.S.C. § 1981a.

B. *Issue of Prompt and Appropriate Action by Defendant is Matter for Jury to Resolve.*

■ Title VII prohibits discrimination by an employer "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). This prohibition extends to sexual harassment in the workplace. *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1982).

■ Plaintiff seeks to recover for hostile work environment sexual harassment.[4] Hos-

---

4. There are two types of sexual harassment: hostile environment and *quid pro quo* sexual harass-

tile work environment sexual harassment entails a pattern of conduct in the work place that "unreasonably interferes with an employee's job performance by creating a hostile, intimidating, or offensive work environment." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986); *see also Mills,* 872 F.Supp. at 987. In order to establish a prima facie case for a Title VII claim against an employer for a hostile work environment, the plaintiff is required to show (1) membership in a protected group; (2) subjection to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition, or privilege of employment, in that it was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment, *see Henson,* 682 F.2d at 904; and (5) that the employer knew, or should have known, of the harassment and failed to take prompt and appropriate remedial action. *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987). The employer can rebut this prima facie showing by "establishing that the events did not take place, or were not sufficiently severe so as to be actionable, or by pointing to prompt remedial action reasonably calculated to end the harassment." *Sanchez v. City of Miami Beach,* 720 F.Supp. 974, 980 (S.D.Fla.1989).

■ In its motion for summary judgment, Defendant does not contest any of the first four elements. The only issue considered here, consequently, is whether Defendant took prompt and appropriate action upon discovering the propensities of Lt. Williams.

■ As to the fifth element, Defendant argues that it cannot be held liable for Lt. Williams' actions because it took prompt remedial action. The requisite remedial action

must be "reasonably calculated to end the harassment," and the promptness and adequacy of the employer's response must be evaluated on a case-by-case basis. Of special importance is whether the sexual

harassment ended after the remedial action was taken.

*Sanchez,* 720 F.Supp. at 981 (citing *Katz v. Dole,* 709 F.2d 251, 256 (4th Cir.1983)).

■ Defendant argues: "Questioning the appropriateness of the remedial action is not a Title VII issue. To allow a plaintiff to lodge such a challenge would be an abuse of Title VII." (Def.['s] Br. in Supp. of Mot. for Summ. J. p. 3.) This Court emphatically disagrees with Defendant's understanding of this issue. Indeed, the main case cited by Defendant supports this very proposition: "An employer is absolved from liability if it takes prompt and *appropriate* remedial action in response to the harassment." *Sparks v. Regional Medical Ctr. Bd.,* 792 F.Supp. 735, 744 (N.D.Ala.1992) (citing *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316 (11th Cir.1989), *reh'g en banc denied,* 874 F.2d 821 (11th Cir.1989)) (emphasis added). Because the jury must find that the action was "reasonably calculated to end the harassment," it necessarily must determine the appropriateness of the actions taken (or not taken) by Defendant. *Katz,* 709 F.2d at 256. "What is appropriate remedial action will necessarily depend on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any remedial steps." *Waltman v. International Paper Co.,* 875 F.2d 468, 479 (5th Cir.1989). Genuine questions of fact which arise in this regard will preclude summary judgment. *Id.*

Defendant's argument rests on the fact that, after it took action upon learning of Plaintiff's complaint in February 1994, no further incidents of harassment took place. This, however, is not dispositive in this regard. Plaintiff's case is founded upon the supposition that Defendant knew of Lt. Williams' other acts of harassment and did not take appropriate remedial measures in order to prevent further harassment against her and others. Therefore, she argues, the Defendant is not absolved from liability for any acts of harassment which took place after 1991 and through February 1994.

ment. The latter involves a supervisor's attempt to garner sexual consideration from an employee by offering job benefits as a *quid pro quo. Hen-*

son, 682 F.2d at 908–11. Plaintiff does not seek to recover under this theory.

■ This Court agrees that, because Defendant may have had actual or constructive knowledge of incidents of harassment involving other women, a factual issue is raised as to whether Defendant acted appropriately in light of that knowledge. Although not cited by either party, a very recent case has addressed this matter directly. In *Hirase-Doi v. U.S. West Communications, Inc.,* the Tenth Circuit ruled that a plaintiff can rely on a defendant's "notice of evidence of sexual harassment . . . that is similar in nature and near in time to his sexual harassment of [the plaintiff] in order to raise a genuine issue of material fact as to whether [the defendant] knew or should have known of [the alleged harasser's] conduct." 61 F.3d 777, 784 (10th Cir.1995) (citing *Paroline v. Unisys Corp.,* 879 F.2d 100, 107 (4th Cir.1989), *rev'd on other grounds,* 900 F.2d 27 (4th Cir.1990)). The question then becomes whether Defendant acted appropriately in remedying the situation of Lt. Williams *as a sexual harasser,* not simply remedying the situation of Lt. Williams *as a sexual harasser of Plaintiff.* Plaintiff may survive summary judgment by adequately substantiating that

> [(1)] [Lt. Williams'] prior conduct toward other female employees should have alerted [Defendant] to the likelihood that he would, despite warnings, also try to harass [Plaintiff]. [(2)] Such notice . . . imposed a duty on [Defendant] to take *adequate steps to try to prevent her harassment, not merely act after the event.*

*Paroline,* 879 F.2d at 106 (emphasis added).

This is a logical comprehension of Title VII which is not controverted by any Eleventh Circuit cases. A contrary reading would allow an employer-defendant to absolve itself of liability by simply removing a harasser from contact with any number of female victims. In other words, Mr. X could harass Ms. A. If Ms. A then complained to the employer, then the employer could simply remove Mr. X from Ms. A's working environment and place him in a different environment with, for example, Ms. B. To say that the employer owes no duty to prevent Ms. B from being harassed contravenes the public policy behind and goals of Title VII. Because the evidence before this Court does not establish the adequacy of Defendant's remedial actions as a matter of law, this Court declines to grant summary judgment. *Mills,* 872 F.Supp. at 988.

### C. *Plaintiff's Claims are Not Time-Barred.*

■ Title VII requires that a charge of sexual harassment be filed with the EEOC within 180 days of the incident. 42 U.S.C. § 2000e–5(e). Defendant raises this defense specifically and solely to the claims for damages occurring between 1988 and 1990. For the reasons stated in § II(A) of this Order, these claims are not compensable. Defendant did not raise the 180 days defense as to any of the other claims which arose between July 1993 and February 1994. This Court does not find that the 180 days limitation period time-bars any of Plaintiff's claims regarding the 1993–1994 incidents due to this Court's recognition of the "continuing violation" theory. *Mills,* 872 F.Supp. at 986. "To establish a continuing violation, the plaintiff must prove a series of related acts, one or more of which falls within the 180 day period." *Id.* (citations and internal punctuation omitted). *See also Waltman,* 875 F.2d at 474; *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 979 (5th Cir.1983). It is not disputed that the February 1994 incident occurred within the applicable period. Plaintiff will bear the burden of proving at trial that the incidents occurring between July 1993 and February 1994 were such a continuing violation. This Court does not find that any of the 1993 or 1994 incidents are time-barred as a matter of law.

As a consequence, Plaintiff's Title VII claim will proceed to trial with the limitations described in § II(A) concerning the pre–1991 incidents.

### III. *Nuisance Claim Not Barred by Georgia Law.*

■ Though the doctrine of governmental tort immunity is an enviable privilege enjoyed by Georgia's political bodies, the tort theory of nuisance is a well established exception to the doctrine. *See City of Thomasville v. Shank,* 263 Ga. 624, 624–625, 437 S.E.2d 306 (1993) (discussing long standing

coexistence of sovereign immunity and nuisance exception). Plaintiff sets forth this cause of action in Count III of her Amended Complaint. This Court will not grant Defendant's Motion to Dismiss this count as the relevant Georgia law does not preclude Plaintiff from proceeding at this point.

■ The case of *Mayor of City of Savannah v. Palmerio* attempted to collate the prior decisions of Georgia appellate courts into a coherent checklist for courts to apply. 242 Ga. 419, 425, 249 S.E.2d 224 (1978). The Georgia Supreme Court constructed this opinion in no small part upon the expansive holding of *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834, 165 S.E.2d 141 (1968). This appeared to be no easy task as the court had to readdress and clarify the issue one year later in *City of Bowman v. Gunnells*, 243 Ga. 809, 256 S.E.2d 782 (1979). There the court commented on the slippery nature of the cause of action stating,

> Neither this court, nor any other court to our knowledge, has been able to give a precise legal definition of nuisance that would apply to all situations. It has been said that pornography cannot be defined but you know it when you see it. A nuisance is in a similar category.

*Id.* at 810–11, 256 S.E.2d 782. The *Bowman* court did, however, synthesize the holdings in *Fort Oglethorpe, Palmerio,* and other appellate decisions into three guidelines which govern the pre-trial disposition of nuisance claims. *Id.* at 811, 256 S.E.2d 782. To prevent summary adjudication, a plaintiff must allege and substantiate each of the following elements:

(1) The defect or degree of misfeasance [is] to such a degree as would exceed the concept of mere negligence....

(2) The act [is] of some duration ... and the maintenance of the act or defect [is] continuous or regularly repetitious.

(3) Failure of the municipality to act within a reasonable time after knowledge of the defect or dangerous condition.

*Id.* (citations omitted). If these acts and omissions worked to "hurt, inconvenience or damage" Plaintiff, then the jury may find for

her. *Fort Oglethorpe,* 224 Ga. at 838, 165 S.E.2d 141.

Defendant seeks to render moot the *Bowman* guidelines by relying upon the pre-*Fort Oglethorpe* case of *City of Cumming v. Chastain,* 97 Ga.App. 13, 102 S.E.2d 97 (1958). In *Chastain,* the plaintiff sought to recover under nuisance for damages inflicted by a police officer who possessed known violent propensities. *Id.* at 14, 102 S.E.2d 97. The Court of Appeals ruled that the plaintiff could not proceed because the plaintiff truly sought to recover for *negligence* under the *respondeat superior* doctrine. *Id.* at 15, 102 S.E.2d 97.

■ The *Bowman* guidelines are not rendered moot because they address the *Chastain* concerns by stating that plaintiffs must "exceed the concept of mere negligence" to recover. 243 Ga. at 811, 256 S.E.2d 782. Additionally, the *Chastain* decision preceded the Supreme Court's more expansive views of the nuisance theory under *Fort Oglethorpe, Palmerio* and *Bowman.* Relying on these decisions, the Court of Appeals more recently ruled that a city could be held liable under nuisance in connection with employment of city employees. *Whiddon v. O'Neal,* 171 Ga.App. 636, 637–38, 320 S.E.2d 601 (1984) (failure to maintain school crossing guard could constitute actionable nuisance). Other cases regarding employment nuisances focus on the repetitive nature of the alleged violations and the municipality's duty and failure to rectify them upon notice. *See City of Atlanta v. Chambers,* 205 Ga.App. 834, 837–38, 424 S.E.2d 19 (1992) (city lacked knowledge of violation crucial to nuisance claim); *Morin v. City of Valdosta,* 140 Ga. App. 361, 231 S.E.2d 133 (1976) (two isolated incidents insufficient to satisfy "continuous act" requirement). Thus, Georgia courts submit cases involving city employees to the same *Bowman/Palmerio/Fort Oglethorpe* analysis as other nuisance cases. *Chambers,* 205 Ga.App. at 837–38, 424 S.E.2d 19; *Morin,* 140 Ga.App. at 361, 231 S.E.2d 133. These cases do not support Defendant's claim that nuisance is not actionable simply because a city employee is involved.

It must be stated that this Court is extremely skeptical of whether Plaintiff can adequately prove this nuisance theory at tri-

al. Of particular concern is the question of whether the acts and omissions of Defendant exceeded the scope of mere negligence. Extreme skepticism alone, however, will not operate to bar this claim. Indeed, the applicability of the *Bowman* guidelines in a case such as this is an unsettled question of Georgia law—one which could be read persuasively either way. As such, this Court is extremely hesitant to grant summary judgment but will be vigilantly observing Plaintiff's case at trial. It should be noted that even if this claim survives throughout the trial, the Georgia law on this matter is in a state of flux such that it may require certification to the Supreme Court of Georgia by the Eleventh Circuit for resolution of this legal matter. *See Brooks v. Scheib,* 813 F.2d 1191, 1195–96 (11th Cir.1987). Regardless, this Court must state its reading of Georgia law on this matter and, in so doing, rules that Georgia law does not bar prosecution of this claim.

Accordingly, Defendant's Motion for Summary Judgment as to the state tort law theory of nuisance is denied.

SO ORDERED.